## Benedict *against* Montgomery.

If a husband and wife join in the sale and conveyance of the real estate of the wife, and the husband receive the purchase money, he receives it as his own, and the law does not raise any implied trust in favour of the wife. And if the purchase money be applied to the purchase of other real estate, and the conveyance be to the husband and his heirs, upon his death the wife has no peculiar equity arising out of the circumstances.

If a legatee, being the executrix, prove the will and accept a bequest under it, she will thereby be equitably estopped from asserting a claim in hostility to other provisions of the will.

ERROR to the Special Court of Common Pleas of *Mifflin* county.

Eliphalet L. Benedict against John Montgomery and others. This was an action of ejectment for a house and lot in Lewistown, in which both parties claimed under Anthony Young.

To maintain the issue on his part, the plaintiff gave in evidence the will of Anthony Young, dated 17th April 1819, which contains the following provisions:—

Item 1st. I give and bequeath to my beloved wife Elizabeth Young the rise, rents and profits of all my estate, real, personal and mixed, during her natural life, except $10 each and every year to my two nieces Elizabeth and Fanny Anne Young, children of my beloved brother John Young deceased, to be paid them from the profits of my estate yearly. I also further devise to my said wife, to her heirs and devisees, £65, the proceeds of a sale of a house and lot in Carlisle. But further it is my will, that should my wife or her heirs hold, take or inherit my real property, in consequence of an assignment made by me in the year 1808—which assignment I do hereby revoke and cancel — then it is my will that the above devise of £65 be void.

Item 2d. I give and devise to my beloved nieces Fanny Anne and Elizabeth Young, all the remainder and residue of my property, real, personal and mixed, after the decease of my said wife, to them, their heirs and assigns for ever.

Item 3d. And it is my will, should my wife Elizabeth die before my nieces aforenamed attain the age of 21 years, I will, that

[Benedict v. Montgomery.]

my real property be not sold till they attain the age of 21 years, or at the discretion of my executors, if it would be most to their advantage.

He then appoints his wife to be the executrix of his will, who proved it, took out letters upon it, and took possession of his personal estate and real. After the death of the widow, on the 29th January 1833, letters of administration, with the will annexed, issued upon the will to Joseph Brower, who conveyed the lot in dispute to the plaintiff.

The defendant, Montgomery, in right of his wife, who was a child of Elizabeth Young, the widow, by a former husband, claimed the lot as her heir at law, under the following evidence :—

22d October 1802, deed, James Smith and wife to Anthony Young, for the lot of ground in controversy. Upon this deed was the following endorsement :—

"Know all men by, these presents, that I, the within-named Anthony Young, have assigned, set over, and by these presents do assign, transfer, and quit-claim to all my right, title, claim and interest of the within-named property, after my decease, to my beloved wife Elizabeth Young, and to her heirs, executors and administrators for ever.

In witness whereof, I have hereunto set my hand and seal, this 1st day of April, A. D. 1808."

ANTHONY YOUNG, [SEAL.]

It was then proved by the scrivener who wrote this deed, that Anthony Young said that he had purchased the property with his wife's money, and she should have it, and her heirs after her death.

The plaintiff then gave in evidence a judgment at the suit of D. W. Huling, against Elizabeth Young, executrix of Anthony Young, the consideration of which was repairs and improvements made upon the property after the testator's death; an execution thereupon, and levy and sale of the personal property of Elizabeth Young, for $107.

The court below was of opinion that unless the wife received the bequest under the will, in lieu of her rights under the deed, assignment and their consideration, equity would decree a conveyance of the property to her; notwithstanding she proved the will and took letters under the circumstances proved.

*Mr. Hale* and *Mr. Parker,* for plaintiff in error, cited 7 *Serg. & Rawle* 63; 17 *Serg. & Rawle* 24. 366 ; 3 *Rawle* 396.

*Mr. Fisher* and *Mr. Banks,* contra, 5 *Johns. Ch. R.* 1 ; 1 *Serg. & Rawle* 317. 408 ; 2 *Dall.* 93; 3 *Binn.* 302; 3 *Rawle* 437 ; 8 *Serg. & Rawle* 492; 1 *Watts* 163; 5 *Watts* 200. 493; 1 *Mad. Ch. Prac.* 40; 2 *Rawle* 168.

[Benedict v. Montgomery.]

The opinion of the Court was delivered by

KENNEDY, J.—A number of errors, no less than eleven, have been assigned in this case, many of which have nothing in them, and cannot be sustained, and therefore need not be discussed. Neither will it be necessary to notice the other errors in detail, as they relate to the instruction given by the court to the jury, in which the court told the jury that the cause turned entirely upon two questions of fact, which they were to solve; the first of which is, did Anthony Young purchase the property in contest with the money of his wife? and the second, if he did, had she been reimbursed or repaid the money so used by him in making the purchase? And although the court did not in terms tell the jury, that if they found the purchase was made by A. Young with his own money, the plaintiff was entitled to recover, yet this may be very fairly inferred from their instruction. But the court directed the jury, if they found that the purchase was made with the money of the wife, and that she had been repaid the amount out of the husband's estate, the plaintiff was entitled to recover; but if she had not been repaid, then the plaintiff could not recover. Now in regard to the first question of fact here left by the court to the jury, it is evident that the court left it to the jury to determine whether the property in controversy was not purchased by A. Young with money arising from the *separate* estate of his wife; for in addressing the jury on this point, the court say : " a variety of decisions in Pennsylvania have established the position, that a purchase with trust-money, in whole or in part, gives the owner of the money a correspondent ownership of the land. And this principle, now well established amongst us, is peculiarly applicable to money arising out of the wife's *separate* estate, and applied by the husband to the acquisition of other property. The law follows the money into the property, and gives the wife the benefit of it, as against the husband and his heirs." Thus it appears that the court considered the evidence given of the declarations of A. Young, that the property in question was purchased with money which he received from the sale of his wife's estate, as evidence going to show that he purchased it with money arising from the sale of her *separate* estate. But this was certainly a misapprehension on the part of the court, as to the nature and tendency of this evidence, for allowing to it its utmost possible latitude in favour of the defendants, even with the aid of conjecture, it only tended to prove that the husband purchased the property in contest with money which he had received from the sale of real estate made by him and his wife, of which he was seised in her right. And the maxim of law, in this respect, is, that "the husband is the head of the wife, and therefore all that she has belongs to him." *Finch's Law* 29. This is even the case as to her real estate during the coverture. It is only in equity that the wife is regarded as having a *separate* estate, and then only when it appears clearly

to have been created for her use alone, and to the exclusion of her husband. *Coomes* v. *Elling*, (3 *Atk.* 679). But in the case before us, it is perfectly clear, from all the evidence given, that the wife of A. Young had no separate estate of any kind, during the coverture, from which money could have been raised by a sale thereof or otherwise, with which the property in question could have been purchased by A. Young, the husband. It was error, therefore, in the court, to leave it to the jury to decide whether it was so or not without evidence. The idea, then, which the court below seem to be desirous of impressing on the minds of the jury, that if they should find that the property in dispute was purchased by A. Young with money arising from the *separate* estate of his wife, she would have a right to follow it in the property, and to claim the property in lieu thereof, is altogether out of the question. Besides, the deed of conveyance which A. Young took of Smith and wife for the property, shows conclusively that he purchased it for his own use, and not in trust for his wife, or any other. By the *habendum* of the deed it is expressly declared that he is "to have and to hold the said lot, &c., thereby granted, &c., to the only profit, use and behoof of the aforesaid Anthony Young, his heirs and assigns." And the law seems to be well settled in this respect, that where a man by the words of the deed, for a valuable consideration expressed in it, as in this case, takes the estate thereby granted to his own use, there can arise no resulting use to any other. *Bendl., p.* 16, *pl.* 20; *Stapley* v. *Lock,* (*Gould.* 82, *pl.* 23); *Adams* v. *Savage,* (2 *Ld. Raym.* 855). Neither can any averment or proof of a use be received, contrary to that expressed in the deed. *Dowman's Case,* (9 *Co.* 10). So that, whether the grantee takes it by the words of the deed to his own use, or to the use of another, there can be no averment that he takes it as a trustee in any other manner; for there is such a sanction given to all solemn acts of contracting, that they cannot be construed directly contrary to their own expressions. *Gilb. on Uses and Trusts* 6; 1 *And.* 313; *Bac. Abr. tit. Uses and Trusts, p.* 92, (*Wilson's ed.*)

It becomes proper now to turn our attention to the deed of assignment made by A. Young in favour of his wife, which is endorsed on the back of the deed of conveyance made to him of the property in controversy by James Smith and wife, and to inquire into the effect of it. In the first place, it may be observed that an estate in fee could not pass by it from the husband, to vest in the wife after his death; for it is a rule of the common law that an estate of freehold cannot be granted to commence *in futuro*. *Barwick's Case,* (5 *Co.* 94, b); 2 *Ventr.* 204; *Roe* v. *Tranmer,* (2 *Wils.* 75). Hence, if a deed of conveyance be made to J. S. and his heirs, after the death of the grantor, to the use of J. S. and his heirs, it is void. *Roe* v. *Tranmer,* (2 *Wils.* 75); *Lamb* v. *Archer,* (1 *Salk.* 225). And as a covenant by the hus-

band to stand seised of the property for the use of the wife, it is also void; for husband and wife, in all matters of property, by the rules of law, are as one person, and it is perfectly clear that no man can covenant with himself. *Gilb. on Uses and Trusts* 53–4; 2 *Rolle Abr.* 788; *Co. Lit.* 112, a. Had the assignment been made to a third person by A. Young, for the use of his wife and her heirs after his death, it might have raised a use in her favour, though not alleged expressly to be in consideration of marriage; for then the covenant would have been with another person, and it would have been a sufficient consideration that the relationship appeared on the face of the covenant, as if a man covenant to stand seised to the use of *his wife, son* or *cousin,* without saying in consideration of the natural love which he bears towards them, the covenant will raise the use. *Bedell's Case,* (7 *Co.* 40); 2 *Wils.* 22; 2 *Sand. on Uses and Trusts* 81.

Seeing, then, that the assignment could have no legal operation in favour of the wife or her heirs, it becomes necessary, in the next place, to examine and ascertain whether it can be sustained in equity or not. It is proper, however, to premise that the assignment, for aught that appears to the contrary, seems to have been purely voluntary; for there is not even a speck of evidence which tends in the slightest degree to prove that the assignment was made by the husband in pursuance of any promise or assurance that he would do anything of the kind, if his wife would join him in making sale of her house and lot situate in Carlisle, whereby he might receive and use the money arising therefrom. This being the case, he must be regarded, I apprehend, as being under no other obligation than that which rests upon every man to provide reasonably for his wife. Though gifts or grants of property by a husband to his wife after marriage are generally void at law, yet in some cases where they would have been held void at law, courts of equity in England, and in some of the United States, have upheld them. The principle upon which these *courts seem* to have acted in this respect is, that when it appears to the court that the grant to the wife is nothing more than a reasonable provision for her, taking into consideration the circumstances of the husband, the court will sustain it; but if it appear to be otherwise, as, for instance, where he by deed grants all his estate or property to her, the deed will be held inoperative in equity, as it would at law; for it could in no just sense be deemed a reasonable provision for her, which is the utmost, as it is said, that courts of equity will hold a wife entitled to. See *Beard* v. *Beard,* (3 *Atk.* 72); *Sheppard* v. *Sheppard,* (7 *Johns. Ch. Rep.* 61); 2 *Story's Eq. Pl.* 1374; *Walter* v. *Hodge,* (2 *Swart. Rep.* 106–7); *Lucas* v. *Lucas,* (1 *Atk.* 270–1). In opposition to this doctrine, however, it was held in *Dibble* v. *Hutton,* (1 *Day's Co.* 221), by the Supreme Court of Errors in the State of Connecticut, that equity there would not assist the wife in compelling the performance of a pro-

[Benedict v. Montgomery.]

mise made to her by her husband, where they, being tenants in common of 55 acres of land, he of three-fourths and she of the remaining fourth, he, in consideration that she would join him in selling the whole, whereby he could obtain a higher price for his interest therein than he could by selling it alone, promised to pay to her, for her separate use, one-fourth of the money for which the whole land should be sold, and to place securities in her hands for that purpose, which he failed to do. The court held that she was not entitled to relief. It is not necessary to pass any opinion upon this case, which goes a great way to show that agreements made between husband and wife during coverture, without the interposition of a third person as a party thereto, are inoperative in equity as well as at law. But taking the principle adopted by the courts of equity in England as our guide, it does not appear, under all the circumstances of this case, that the defendants, who claim to derive their right to the property in dispute from the wife, are entitled to hold it under the grant contained in the assignment made by the husband to the wife. The property thereby granted would seem, according to the allegations of the defendants, to have been the principal or chief part of his estate. But, whatever the residue of the husband's estate may have amounted to, it is clear from the evidence that she upon his death possessed herself of the whole of it, and used it. This, it must be admitted, she had a right to do under the terms of the husband's will; but then she could not claim to do this, and, at the same time, claim to hold the property in question under the assignment from her husband, so as that it should be transmitted, upon her death, by descent to her heirs. For that would be permitting her to take all the estate of the husband, not only contrary to his intention, as expressed most clearly in his will, but contrary likewise to the principle upon which courts of equity have professed to act in upholding contracts made between husband and wife during coverture. Seeing, then, that the wife in her lifetime, after the death of her husband, possessed herself of all his estate, and consumed and disposed of it all, except that in contest, it would be unreasonable and unjust to permit her heirs now, she being dead, to hold the property in contest, which would in effect be giving to her the whole of the husband's estate—a provision that he never intended she should have, and one which equity will not support. We are therefore brought to the conclusion that the court erred in the view which it took of the case in charging the jury.

Judgment reversed, and *venire de novo* awarded.