## SESSIONS' ADM'R vs. SESSIONS.

[BILL IN EQUITY BY WIDOW AGAINST HUSBAND'S ADMINISTRATOR.]

1. *Respective interests of husband and wife in proceeds of sale of wife's land.*—Where lands, descended to the wife in 1847 during coverture, were sold and conveyed by her and her husband jointly in 1854 ; and a note taken for part of the purchase-money, payable to the husband, did not mature until after his death,—*held*, that the sale operated a conversion of the realty into personalty, but did not divest the wife's interest in the proceeds of sale ; and that the entire interest in the note given for the purchase-money, except the annual interest which had accrued at the death of the husband, became the wife's separate estate under the Code.

2. *When widow may come into equity against husband's administrator.*—A widow cannot maintain a bill in equity against the administrator of her deceased husband, to recover money collected by the administrator on a note given for the purchase-money of the wife's land, when it appears that the entire interest in the note, except the annual interest which had accrued up to the death of the husband, belonged to the wife's separate estate under the Code : her remedy at law, in such case, is clear, adequate, complete, and exclusive.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. WADE KEYES.

THE bill in this case was filed by Mrs. Lydia Ann Sessions, against the administrator of her deceased husband, John B. Sessions, and alleged the following facts : That the complainant and her said husband were married about the year 1840 ; that in 1847, her father, Thomas Bowman, departed this life in said county, leaving her his only child and heir-at-law ; that no administration was ever taken out on his estate, because it was entirely free from debt ;

that said Bowman died seized and possessed of a large tract of land in said county, of which complainant and her husband took possession on his death, and which they continued to hold until April, 1851, when her husband sold a portion of it to Mrs. Ann McNeill, received the purchase-money, and converted it to his own use; that complainant joined with her husband in the execution of a conveyance to Mrs. McNeill, which was duly acknowledged and recorded; that on the 17th January, 1854, her husband sold another portion of said land to one Richard C. Parker, at and for the price of $2,400; that she joined with her husband in the execution of a deed to said Parker, which was duly acknowledged and recorded; that her husband received $400 of the purchase-money in cash at the time of said sale, and, without her knowledge or consent, took Parker's note for the balance, payable to himself, and due on the 1st January, 1855; that her husband afterwards died, before the maturity of said note, which Parker paid at maturity to the defendant, as his administrator; that his estate was largely insolvent, unless this money should be applied to the payment of his debts; and that complainant had no separate estate, except about one hundred and sixty acres of the land still remaining unsold. The bill prayed an injunction against the administrator, to restrain him from using or applying the money as assets of his intestate's estate; that he might be declared to hold said money as trustee for complainant, and be directed to pay it over to her; and the prayer for other and further relief was added.

The administrator answered the bill, denying all its allegations, and demurring to it for want of equity.

The only testimony in the cause was the deposition of said Parker, which was taken by the complainant. This witness proved the death of Bowman, but without specifying the time; that Mrs. Sessions was his only child and heir-at-law, and inherited from him a large tract of land in said county; that he (witness) bought a portion of this land, (not stating from whom,) paid a portion of the purchase-money in cash to John B. Sessions, gave his note for the balance, which he delivered to said Sessions in the

presence of his wife, and afterwards paid said note to the defendant as his administrator.

The chancellor overruled the demurrer to the bill, and, on final hearing, rendered a decree for the complainant, which is now assigned as error by the administrator.

WATTS, JUDGE & JACKSON, for the appellant.

D. W. BAINE, *contra.*

RICE, C. J.—It seems to be conceded in the arguments of the counsel, that if the bill contains any equity, it is only in relation to the sale of the lands to Richard C. Parker, and the proceeds of that sale; and inclining to the opinion that the concession is correct, we shall treat it as correct, and proceed to examine whether there is any equity in that feature of the bill.

It is clear that *the lands* never belonged to complainant, as her *separate estate;* because they descended to her as the only child and heir of her father, during her coverture, in 1847, and before the passage of any statute declaring lands thus accruing to a married woman to be her separate estate.

During the life of her husband, he, as well as she, had rights in respect to the lands. His rights were simply those of a tenant by the curtesy. Subject to those rights of the husband, the lands were her property. The Code (§ 1282) authorized her to join a conveyance of them to any *third person;* but section 1985 of the Code prohibits husband and wife from contracting with each other for the sale of any property. The conveyance of the lands by her and her husband to Parker, was executed after the Code went into effect; and the Code, of course, applies to that transaction. Her joining in that conveyance, *under the Code,* cannot be construed as divesting her of all right, both to the lands, and to the price which Parker agreed to pay for them. As she and her husband each had, at that time, rights in respect to the lands, as above stated, and a capacity to convey them to a *third person,* it is more natural and just to construe the transaction on their part

as a designed *conversion* of the *realty* into *personalty*. Viewed in this light, the personalty was *new property* acquired during coverture, and under the Code. In this new property thus acquired, the husband and wife each had rights. The right of the husband in it, whether measured by the woman's law found in the Code, or by the extent of his rights in the realty, which had been converted into the new property, did not embrace more than the profits (that is, the annual interest) which accrued on the new property (the note of Parker) up to the death of the husband. The right of the wife in the new property (the note of Parker) embraced all of it, except the annual interest which had accrued up to the death of her husband, and became her *separate estate* by virtue of the Code. Code, § 1982. This right of the wife ought not to be treated as assets of her husband's estate.

If it be conceded that, before the collection of this note, the complainant's husband in his life-time, and his administrator after his death, held it in trust for complainant, to the extent of her interest therein ; yet, when the trust, by the collection of the note, became a mere money transaction, then, although originating in a trust, the claim in favor of complainant assumed the character of a debt; and, therefore, cannot be enforced in a court of equity— the remedy at law being clear, adequate, complete, and exclusive.—Maury v. Mason, 8 Porter, 211 ; Huckabee v. Andrews, 30 Ala. 143.

It follows, that complainant's bill contains no equity ; that the decree of the chancellor must be reversed, and the bill be dismissed for want of equity. The complainant must pay the costs of this court, and of the court below.