# Castleman *v.* Jeffries.

*Action by Wife, for Money Had and Received, belonging to her Statutory Separate Estate.*

1. *Wife's statutory separate estate ; statutory provisions apply to what.*—By the uniform decisions of this court, the various statutory provisions securing and regulating the separate estates of married women have been held applicable only to property which, in the absence of those statutes, would not be the separate property of the wife.

2. *Common law; presumption as to existence of, elsewhere.*—The presumption, in which the courts of this State indulge, as to the existence of the common law in other States having the same common origin, does not apply to Texas, whose origin was different.

3. *Conflict of laws as to rights of property, real and personal.*—Real property, as to its title, descent, and the forms necessary to be observed in its conveyance, is governed by the laws of the country in which it is situated ; but personal property follows the domicile of the owner.

4. *Foreign laws; how administered here.*—The acknowledged rule of comity, which requires that full effect shall be given by our courts to foreign laws, when, by change of domicile, or removal of property, the legality of transactions had under those laws is brought before our tribunals, is always subject to the fundamental condition, that the foreign law does not contravene the positive law or public policy of our own State.

5. *Conversion of wife's lands into money, by sale.*—Where husband and wife are domiciled in Alabama, and lands belonging to the wife in Texas are voluntarily sold by them, the proceeds of sale being remitted to them here, the money is to be regarded as the acquisition of new property, and becomes a part of the wife's statutory separate estate.

6. *Husband's power to use and invest wife's money.*—As to money belonging to the *corpus* of the wife's statutory separate estate, the husband, as her trustee, has large discretionary powers of investment, and may lawfully use it in purchasing "articles of comfort and support of the household," such as her separate estate is by statute rendered liable for, or in payment of such articles already purchased.

7. *Creditor's right of retainer, as against wife, on account of family supplies furnished.*—A person who has received or collected money belonging to the *corpus* of the wife's statutory separate estate, under such circumstances as render him only liable to her for so much money had and received, may lawfully retain the amount due to him for necessary family supplies furnished by him to her and her husband, for which the statute renders her estate liable.

8. *Payment ; what evidence admissible under plea of, and what constitutes.*—In an action by the wife, suing alone, for money had and received, belonging to the *corpus* of her statutory separate estate, the defendant may show, under the plea of payment, that the money was collected by him on a check, or draft, which the husband had delivered to him on account of an indebtedness for "articles of comfort and support of the household" already supplied and furnished by him, and which was received and used by him as so much money: if the check was delivered and received as a payment, or if it was delivered pursuant to an agreement, made when the debt was contracted, that payment should be so made, it would constitute a payment.

9. *Set-off ; requisites of plea of.*—A plea of set-off requires the same averments which would be necessary to make a good complaint if the claim were sued on ; but it is not necessary that facts averred in the complaint should be repeated in the plea.

VOL. LX.

[Castleman v. Jeffries.]

APPEAL from the Circuit Court of Hale.

Tried before the Hon. GEO. H. CRAIG.

This action was brought by Mrs. Ann M. Jeffries, the wife of Walter B. Jeffries, against D. J. Castleman, to recover the sum of $701.13, alleged to be "due by account for money had and received by Jeffries & Castleman (a firm composed of A. S. Jeffries and the said D. J. Castleman), belonging to the *corpus* of the statutory separate estate of the said Ann M. Jeffries, and received by said Jeffries & Castleman on the 18th November, 1872 ; " and was commenced on the 8th February, 1875. The defendant filed five pleas—namely: 1st, *non assumpsit* ; 2d, payment ; 3d, set-off ; and the 4th and 5th as follows : 4. "That at the time the said summons was sued out, the said Walter B. Jeffries was indebted to him by account, to-wit, in the sum of $1700, due to and made with the said firm of Jeffries & Castleman during the years 1870, 1871, 1872, 1873, due and payable on the first day of January next, for goods, wares, and merchandise sold by them ; and defendant avers, that at the time said account was contracted, the said Walter B. Jeffries and Ann M. Jeffries were husband and wife, living in said · county of Hale ; and that said Ann M. Jeffries owned a statutory separate estate, of the money sued for in this action, at the time said account was contracted ; and that said account was for articles of comfort and support of the household, suitable to the degree and condition in life of the family of said Walter B. and Ann M. Jeffries, for which the said Walter B. would be responsible in an action at common law, and for which said statutory separate estate of said Ann M. Jeffries was liable by statute; which said account defendant hereby offers to set off against plaintiff's said demand." 5. " That on the first day of January, 1870, defendant was merchandising in the town of Greenesboro, Alabama, in partnership with the said A. S Jeffries ; and that the said Ann M. Jeffries, at or about that time, came to the store of this defendant, and told him, 'we,' meaning she and her family, would want to get some goods and groceries, and some money, that she would have some money coming to her soon, and that she wished to get the goods and groceries to be paid for out of said money ; that defendant determined to let her have the goods and groceries she wanted, and did so ; and that on, to-wit, about the first day of July, 1870, the said Walter B. Jeffries brought and delivered to this defendant, for Jeffries & Castleman, a certain draft for about $300, payable to the said Walter B. Jeffries, and by him indorsed ; that on said day, this defendant, for Jeffries & Castleman, took said draft for collection, and paid some money on account thereof to said Walter B.

Jeffries ; and that afterwards, to-wit, on or about the—— day of ——, the said Walter B. Jeffries came to the store of Jeffries & Castleman, with a draft for about $300, payable to Ann M. Jeffries, and indorsed by said Walter B. and Ann M. Jeffries, which defendant knew, or understood to be, the money referred to in the conversation had with Mrs. Ann M. Jeffries ; and that Jeffries & Castleman collected said last mentioned draft, and have, in pursuance of said understanding so had as aforesaid, before the commencement of this action, sold and delivered goods and *groceries*, and paid money to the said Walter B. Jeffries and Ann M. Jeffries largely more than the amount of both of said drafts. Wherefore, defendant says, that said debt is, and was at the time said suit was begun, fully paid and discharged."

A demurrer having been sustained to the 5th plea, the defendant amended it, by leave of the court, by adding after the word "*groceries*," as contained in the latter part of the plea, these words : "And that the goods so sold were articles of comfort and support of the household, suitable to the degree and condition in life of the family of said Ann M. and Walter B. Jeffries, and for which the husband, the said Walter B. Jeffries, would be responsible at common law, and that said W. B. Jeffries was and is insolvent." To the plea as amended the plaintiff again demurred, and assigned the following as causes of demurrer : 1st, "that plaintiff is a married woman, and her action is for the recovery of the *corpus* of her statutory separate estate under the laws of Alabama, and the contract set up in said plea for the disposition of her estate is void under the laws of Alabama, and confers no right on the defendant in answer to plaintiff's demand as set forth in her complaint;" 2d, "because said plea does not deny that the money or drafts, received by him, were the statutory separate estate of plaintiff, and the matters set forth in said plea do not show any sufficient answer to his liability to answer to the plaintiff for said statutory separate estate so received by him ;" 3d, "that the action being in the name of the said Ann M. Jeffries, a married woman, and for the *corpus* of her statutory seperate estate, the several matters therein set up are not good in answer to her complaint, either as a payment, or as a set off, or by virtue of the agreement or transaction set forth in said plea ; " 4th, that a demand for goods for the comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law, can only be enforced against the *corpus* of the wife's statutory separate estate, by suit against the husband alone, or against the husband and wife." The court

[Castleman v. Jeffries.]

sustained the demurrer, and issue was then joined on the 1st and 2d pleas. There was a demurrer to the 3d and 4th pleas, but the record does not show what disposition was made of it, nor does it show that issue was joined on either of those pleas.

By written agreement, entered into pursuant to the act approved March 6, 1875 (Code of 1876, §§ 3029–31), the cause was submitted to the court for decision, without the intervention of a jury; and the court was requested to make a special finding of the facts. The special finding of the court was as follows : "1. That the defendant was a member of the firm of Jeffries & Castleman, merchants in Greenesboro, Ala.; which firm received two drafts, the first for $299.38 in gold, dated Uniontown, Ala., July 25, 1870, payable to the order of W. B. Jeffries, drawn by Bush Jones on T. P. Miller & Co. of Mobile, Ala., upon which they received, according to the testimony of the defendant, the sum of $59.87 premium, in United States currency; and the second dated August 18, 1870, for $294.72, payable to Ann M. Jeffries, on and by the same persons as the first, on which they received, in United States currency, the sum of $47.15 premium. The first draft thus amounted, in United States currency, to $359.25, received by them July 26th, 1870 ; and the second amounted, in the same currency, to $341.87, and was received by them August 22d, 1870. 2. That such money was the proceeds of certain lands in the State of Texas, which descended from the father of plaintiff, to plaintiff and two sisters ; that said lands were there sold, by consent of said heirs, for distribution, and the proceeds of plaintiff's share of said land remitted by the above drafts to her, through the above-mentioned drawer. 3. That the proceeds of said drafts constituted the *corpus* of plaintiff's separate estate as a married woman, under the statutes of Alabama. 4. That said drafts were deposited with the firm of Jeffries & Castleman, of which firm the defendant was a member, for collection. 5. That the sum of $130.60, of said proceeds of said drafts, was paid by defendant to plaintiff and her husband ; which, on the 18th November, 1872, would leave a balance of $570.52, of said proceeds of said drafts, as due to plaintiff. 6. That the said firm had notice of the character of the funds arising from said drafts. 7. That the plaintiff, before the commencement of this suit, demanded payment of said money of said defendant. 8. That the account offered in evidence by the defendant was kept with and made against Walter B. Jeffries, plaintiff's husband. 9. That, under the pleadings and previous rulings of the court in the case, there was no legal and valid transfer or conveyance of said *corpus* of said statutory separate

estate ; and the question of the character of the goods fur-
nished, so as to charge said separate estate therewith, does
not arise ; and the testimony thereon is irrelevant and inad-
missible, and is therefore excluded.   10.  That the legal inter-
est on said sum of $570.52, from the 18th November, 1872, to
this time, should be allowed, amounting to $134.42, which,
with the said principal, amounts to $704.94 ; which sum, it is
ordered, that the plaintiff do have and recover of the said
defendant, together with the costs, for which execution may
issue."

The bill of exceptions purports to set out all the evidence
adduced on the trial, and states that Mrs. Jeffries, the plain-
tiff, testified on her own behalf as follows :  "That she is the
wife of W. B. Jeffries, and resides with her said husband, in
said county of Hale, where she also resided in 1870 ; that
she owned an estate of about $1,200, which came to her as
one of the heirs of her father, the late W. M. Murphy, who
died in Alabama in 1858 ; that it consisted of money, the
proceeds of lands in Texas which belonged to her said father,
and were there sold, in the spring of 1870, by consent of
herself and her two sisters, who were jointly interested
therein ; that her husband employed Judge Bush Jones, of
Uniontown, Ala., to attend to the collection and receiving of
her share of the land ; that Judge Jones did so, and the
money was remitted to him from Texas, and he remitted it
in the form of the drafts on T. P. Miller & Co.," which were
produced.   "Plaintiff stated, also, that these drafts were
carried by her husband to said Jeffries & Castleman, for col-
lection, and they realized and received, of principal and pre-
mium, about $700, in July, or August, 1870 ; that she applied
to the said defendant, soon after the collection of the last
draft, for the money, as she had an opportunity to lend it
out on advantageous terms ; that defendant said, in reply,
he regretted exceedingly not being able to pay her, as he
had used the money to pay freight on goods, and in his bus-
iness ; that she afterwards applied to him for money, and
received from him about $30 : that she never consented, or
agreed, to apply her money to the payment of goods and pro-
visions bought either by her husband or herself ; and that
she did get and buy goods and provisions at the defendant's
said store, in her own person, and on orders written by her."
Being cross-examined in reference to the account of Jeffries
& Castleman against Walter B. Jeffries, hereinafter men-
tioned, she specified some of the items as "articles suitable
and necessary for herself and family ;" but this evidence,
"as to the character of the goods—whether they were arti-
cles of comfort and support, suitable to the degree and con-

[Castleman v. Jeffries.]

dition in life of the family of plaintiff and said W. B. Jeffries"—the court excluded and rejected, on motion of plaintiff, on the ground that it was irrelevant; to which ruling the defendant reserved an exception. "Plaintiff stated, also, that there were other articles of a similar nature in said account, which she had herself purchased, during the years 1870, 1871, 1872, after her money was in the defendant's hands as above stated; that she did not agree, or intend, to apply or use her money in paying for the goods so bought by her or her husband; that she did not remember having any conversation with the defendant, about the beginning of the year 1870, when she bought the first bill of goods, but did have a conversation with said A. S. Jeffries, who was her husband's uncle, down at his house, about opening said account, before she went up to the store; also, that her husband, said Walter B. Jeffries, was insolvent at the date of these transactions, and is so now; that he farmed in partnership with one H. T. Waller in 1870, and with J. C. Nelson in 1871, and with said A. S. Jeffries in 1872."

"The defendant testified that, on or about the 1st January, 1870, he had a conversation with plaintiff in the store of Jeffries & Castleman; that she said to him: 'We will have some money coming before long, and we want to get some goods and groceries, and when the money comes, it will be placed in your hands; and we want some money, but not very much.' Witness said, that upon the faith of the representations about the money he then let plaintiff get the goods and articles charged under date of January 8, 1870, and others afterwards; that on or about the 26th July, 1870, said Walter B. Jeffries came in, and brought the following draft,"—the first draft above described, "which witness understood to be for some of the money referred to in his said conversation with plaintiff; that he forwarded said draft to his correspondent in Mobile for collection, and received on it $59 premium, said draft being payable in gold; that on the day he received said draft from Jeffries, he let said Jeffries have $40 in currency on account thereof; that afterwards, on or about the 20th August, 1870, said Jeffries again came, and brought to him the following draft," namely, the second draft above described; "that he collected on this draft $47.15 premium, making the total amount received by him on both drafts $701.12; that he never knew, or had any intimation, that said money belonged to plaintiff, until after the whole amount of both drafts had been paid to plaintiff and her husband, in money and goods; that after the receipt of said first draft he paid money to plaintiff, and also to her said husband at times, out of the money so collected, as

(25)

entered on the account, which was kept against said Walter B. Jeffries; that he furnished goods and groceries to plaintiff and her said husband, between 8th January and July 26th, 1870, on the faith of the money to come, amounting to $202. 92 ; that plaintiff and her husband, after said draft came to hand, received money, and bought goods and groceries from him, which were furnished by him in payment of the money so received, then in his hands ; that he would not have sold goods to said Walter B. Jeffries on credit; that as long as any of the proceeds of said drafts remained in his hands, no goods or groceries were sold on a credit, but were sold for the money in hand ; that he did sell goods to plaintiff and her husband on a credit, after the proceeds of said drafts were thus exhausted, on the expectation that said A. S. Jeffries, his partner, would assume and pay the debt, but he refused to do so, and only paid or assumed $166 of the amount thus sold. Said witness testified, also, that plaintiff did call on him for some money, perhaps once or twice, but not for any large amount; that he did not refuse to pay her, but deferred her, and paid her in a short time the small sums called for; that she never did demand the whole of said money of him at any one time, or at all, until the bringing of this suit; and that he never refused to let her have money, when she called for it, until after she and her husband had received from him, in money and goods, all that he had received on said drafts. He further testified, that he furnished and paid to plaintiff and her husband, in money and goods, between 8th January and 20th August, 1870, $437.76, of which sum $234.84 was furnished and paid to them after he received the first draft, and before he received the second; that plaintiff had received and bought from him in her own person, during the years 1870, 1871, 1872, in goods and money, not including her written orders, $958.87, and including her orders $1,110 ; that he had paid her and her husband $130.60, not including any orders for cash, and had paid cash to other persons, on their orders, $61.15 ; and he then produced a bundle of orders written by plaintiff," some of which are copied into the bill of exceptions. These orders the court excluded, on motion of the plaintiff, on the ground that they were irrelevant; to which ruling the defendant excepted. The defendant also produced the account of Jeffries & Castleman against said Walter B. Jeffries, amounting in the whole to $1,747.35, the balance still due and unpaid being above $500, and testified to its correctness ; and he further testified, " that said Walter B. Jeffries had full knowledge of the payment of the money arising from said drafts, by the purchases of goods and receipt of money, and

assented to and ratified it; that he also talked with plaintiff, after the dissolution of the firm of Jeffries & Castleman, about said unpaid balance of $500, and she expressed her regrets at their not being able to pay it, and their full intention to do so as soon as they were able; also, that neither plaintiff nor her husband ever raised any objection to the manner of settlement of said account for the money arising from said drafts; also, that when he received the second draft, payable to plaintiff, he presumed that it was her money, and also presumed that the first draft came from the same source; and he explained that the he meant he supposed it was all a part and parcel of the same money to which plaintiff had referred in her first conversation with him, as above stated."

H. Witherspoon, who was a clerk in the store of Jeffries & Castleman during the years 1870–72, testified to the correctness of the account against said Walter B. Jeffries; also, "that on one occasion, during that time, plaintiff said to him, while buying goods at the store, that they ought to sell Walter, meaning her husband, goods at cash prices, as he had money on deposit there to pay for them; and that the goods sold to plaintiff and her husband were, to the best of his recollection, sold at marked prices." The plaintiff testified, "in rebuttal, that the money of which she spoke to said Witherspoon, on which she thought she should get goods at cash prices, was for a bale of cotton which they had sold for her, and which is not claimed in this action; also, that she got Jeffries & Castleman to buy a bill of goods for her in New York, for which she paid them $18.25 in 1870, and paid the balance to said A. S. Jeffries; that she informed said A. S. Jeffries of expecting to receive said money from the Texas lands, and that she wished to use it in the purchase of a home for herself and her children; and that she told him this after said drafts were placed with said firm for collection;" and she further testified, that her husband had never had a settlement of his partnership business in planting with said A. S. Jeffries, and had always supposed, until after the dissolution of the firm of Jeffries & Castleman, that said A. S. Jeffries had paid the account introduced in evidence by the defendant.

The several rulings of the court on the pleadings and evidence, as above stated, the special finding of the court, and the judgment thereon, are now assigned as error.

JAMES E. WEBB, and THOS. H. WATTS, for appellant.

SMITHS & ROULHAC, contra.

STONE, J.—"All property of the wife, held by her previous to the marriage, or which she may become entitled to

after the marriage, in any manner, is the separate estate of the wife," . . —Code of 1876, § 2705. Under this statute, and all sections of the Code bearing on the same subject, we have uniformly held, that the provisions therein found relate exclusively to estates which, in the absence of the statute, would not be the separate property of the wife. 2 Brick. Dig. 91, § 272. The statute has never been construed as affecting rights of property which had vested prior to its enactment, or choses in action of the wife, when both the ownership and the marriage antedated the enactment of the statute.—*Ib.* §§ 268, 269, 270, 276.

2. In the present case, lands descended to the plaintiff and her sisters. The lands were in the State of Texas, and were sold for partition; and the share of plaintiff came to her in money, the proceeds of the lands. Plaintiff, so far as we are informed, has all the while been a resident of Alabama. She surely was when she received the money. The question arises, what are the several rights of wife and husband in the money? No proof was made of the laws of Texas bearing on this question. If Texas had had a common origin with this and the other older States, we would presume the common law prevails there.—1 Brick. Dig. 349, § 9. But Texas did not have a common origin with these older States, as to which this presumption is indulged. Hence, we are left without proof, and without presumption, as to what are the laws of Texas which govern the transmission of property, and the effect of marriage upon its title and enjoyment.

3. An examination of the various statutes will show, that scarcely any two States have similar statutes on the subject we are considering. Immoveable, or real property, is governed by the law of the country in which it is situated, as to its title, descent, and the forms necessary to be observed in its conveyance.—*Nelson v. Goree,* 34 Ala. 563. The rule is different as to personal property.— *Turner v. Fenner,* 19 Ala. 355.

As we have said above, the plaintiff and her husband are residents of this State; they were probably married in this State; and it follows, that the laws of no foreign State have stamped their impress on any personal property belonging to either, which can follow and attach to it in this State.— *Drake v. Glover,* 30 Ala. 382. Personal property, as to ownership and transmission, is governed by the law of the domicile of the owner.—*Nelson v. Goree, supra;* Wharton's Confl. of Laws, § 297. If we were to apply to the products of property, having its *situs* in another State, yet owned by persons domiciled in this, and who bring such products into this State, the laws which governed the property in the State

from which the products were brought, we should soon find ourselves involved in confusion, of which the shrewdest can scarcely conceive. It is not beyond the pale of possibility, that one and the same person may own lands in several different States, in one of which the common law prevails, in a second the civil law, and in others various modifications of statutory systems, which secure to married women the seperate ownership of their property. In the several landed interests thus situated, the owner, being a married woman, and having her domicile in this State, would have very variant rights, and her powers of alienation and enjoyment might be equally variant. Now, let these lands be converted into money, and the money brought into Alabama, the domicile of the wife; how could the character of estate, which local law had impressed upon the land, follow the money into this State, and stamp its characteristics upon it? Money has no earmark, and the profession will readily understand into what inexplicable confusion such holding would lead.

4. We take another step. While we accord to other States plenary legislative sovereignty in the matter of making and enforcing contracts, and of acquiring, enjoying, and disposing of property within their territorial jurisdictions, and will give full effect, as a rule, to their laws, when, by change of domicile, or removal of property, the legality of transactions there is brought before our tribunals; yet, this comity of nations must be taken and administered with the fundamental condition, that such foreign law does not contravene the positive law, or public policy of our own State.—*Hanrick v. Andrews*, 9 Por. 9; *Newcombe v. Leavitt*, 22 Ala. 631.

5. Influenced by the fact that real estate, voluntarily converted into personalty, can not, even when the two species of property are owned and held in the same jurisdiction, be enjoyed and disposed of under one and the same system of rules, it has been held, where the common law defines the property-rights springing out of the marital relation, that "where a wife joins her husband in the sale of her real estate, without an agreement in reference to the proceeds of sale, the proceeds vest absolutely in the husband."—*Chester v. Greer*, 5 Humph. 26; *Martin v. Martin*, 1 Comst. 473; *Benedict v. Montgomery*, 7 Watts & Serg. 238. This results from certain rules of the common law, namely: that the rights and interests of the husband in the wife's realty are inadapted to the use and enjoyment of money; and the absolute ownership which the law gives to the husband, when he reduces to possession the wife's personal property, including her moneys, is incompatible with the temporary seizin which the same common law gives to him in her realty. The con-

version of the property from realty to personalty, necessarily takes it from under one system of rules; and when effected voluntarily, and without any settlement or contract defining its future use, the law alone operates upon it, and declares its *status*. What law? On principle, it would seem it ought to be the law then in force, and not an exploded, or superseded system. So, in *Sessions v. Sessions*, 33 Ala. 522, where the marriage took place prior to the enactment of the statutes securing to married women their separate estates, the wife being at the time seized of real estate; and after the enactment of those statutes, the husband and wife sold the lands, and converted them into money; it was held, that the proceeds were thereby converted into new property, and they became the separate estate of the wife under the statute. A similar principle was declared in *Sampley v. Watson*, 43 Ala. 377.—See Whar. Confl. Laws, § 198.

To avoid the embarrassments attending any other rule, we feel it our duty, in cases like the present, to follow the lead of *Sessions v. Sessions, supra*, and hold that money, thus received, must be regarded and treated as the acquisition of *new property*, governed by the laws of this State, which define the several rights of husband and wife in such newly acquired property; the law in force at the time of the new acquisition.

6. We think no importance should be attached to the fact that checks, instead of money, were paid by Jeffries to appellant. Commercial payments are most generally made in checks; and we shall treat this case as if cash had been handed by Jeffries to Castleman.—*Stewart v. Connor*, 9 Ala. 803. Saying nothing, then, about the alleged agreement between Mrs. Jeffries and Castleman, by which it is averred, though somewhat denied, that the former obtained the credit on the faith of her expected remittance from Texas, and on her promise to pay the account when the remittance should come to hand, we have this simple state of facts: Castleman had in his hands seven hundred dollars in money, of the *corpus* of Mrs. Jeffries' statutory separate estate, and there appears to have been due to him a much larger sum, on contracts, largely made by Mrs. Jeffries herself, "for articles of comfort and support of the household, * * suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law." The case may be justly stated even stronger than this. The testimony tends to show that Jeffries, the husband, actually paid, or turned over to Castleman, the money, or checks, which the present suit seeks to recover from him.

The money in controversy in the present suit, when it was realized by Mrs. Jeffries, vested in her husband as her trustee,

[Castleman v. Jeffries.]

who had the right to manage and control the same—.Code of 1876, § 2706. In *Marks v. Cowles*, 53 Ala. 499, this court, commenting on section 2709 (Code of 1876), said: "The statute is silent as to money, the *corpus* of the wife's separate estate, not the subject of alienation, but the subject of conversion into other property, or of investment, unless it is derived from a sale of other property." The court then proceeded to declare, that of this money, *corpus* of her estate, which was not proceeds of her property which had been sold, the husband was trustee, with large powers of investment, and that without any direction or decree of the chancellor authorizing such investment. We do not doubt the power of the husband to invest moneys, the *corpus* of the wife's separate estate, in the purchase of articles of comfort and support of the household, or to employ them in payment of those previously purchased, if they fall within the classes for which they are declared to be liable under section 2711, Code of 1876.

7. Nor do we doubt that a creditor, who is in possession of moneys of the wife, which he holds in such manner as to constitute him only a debtor to her, as so much money had and received for her use, may retain such money in payment of any just demand he has, which, by said section, is made a charge on her statutory separate estate; and, if sued by her for such money, he can successfully defend on that ground. To hold otherwise, would be to declare that a *feme covert*, owner of a statutory separate estate, could successfully maintain a suit for the money, when, at the same time, the creditor could successfully prosecute a suit against the *corpus* of her estate, for the same, or larger amount. The law abhors circuity of action, and will adjust cross demands between parties, whenever it can do so consistently with its rules of procedure. The action for money had and received is an equitable action, and can not be maintained when the defendant can show that, *ex æquo et bono*, he is authorized to retain the money alleged to be in his hands.—1 Brick. Dig. 140, §§ 72, 73; *Ib.* 142, § 106.

8-9. The defense in the present action assumes two forms. First, it is alleged that, in consideration of "articles of comfort and support of the household," &c., furnished and to be furnished by Castleman to Jeffries and wife, Jeffries, the husband and trustee, turned over and paid to Castleman the two checks, which were received and used as so much money. If this be so, and if such articles were furnished in value equal to, or greater than, the sum of the two checks and the premium thereon, then this is a complete defense to the action, and could be given in evidence under the general plea

[Castleman v. Jeffries.]

of payment. The second form of defense is set-off. Set-off, being in its nature a cross action, or revocatory suit, must be pleaded with the same formality which would be required in a complaint, if it were made the cause of an action brought. See *Ravisies v. Stoddard*, 32 Ala. 599.

The fifth plea, as amended, is scarcely a good plea of payment. The delivery of the checks by Mr. Jeffries did not necessarily, and *per se*, constitute such delivery a payment, unless something was done or said, at the time, showing that they were delivered as payment. Coupled with the agreement that payment would be so made, alleged by Castleman to have been entered into when the account was opened, if it be true that such agreement was made, the delivery by Jeffries, even if silently done, would amount to payment pursuant to the agreement. The averment in that plea, referring to the delivery of the checks by Jeffries, is in the following language: "which defendant knew, or understood to be, the money referred to in the conversation had with Mrs. Ann M. Jeffries." This is not equivalent to an averment that it was the money referred to by her. This averment is bad. The plea should aver, positively, that it was the money referred to in the conversation ; or, it should aver that it was delivered by Jeffries in payment. In either form, it would be a good special plea of payment.

But this plea has some averments which tend to show it was intended as a plea of set-off. As such plea, it was not necessary it should aver the money sued for was of the statutory separate estate of Mrs. Jeffries. That had been averred in the complaint. As a plea of set-off, however, it is defective in this : it fails to aver that Mrs. Jeffries owned such statutory separate estate before July, 1870, and claims as a set-off some items of account sold and delivered to her before that time. The plea is to the whole action, and does not show how much of the account was contracted after the land was converted into money, and thereby became her statutory separate estate. It is perfectly consistent with every averment in the plea, that the bulk of the account was contracted before she acquired any separate estate, which, under the rules we have declared, would be brought under the dominion of our statutes. As soon as the land became money by conversion, the money, no matter where situated, became the statutory separate estate of Mrs. Jeffries, whose domicile was in Alabama. Only the separate estate owned by Mrs. Jeffries at the time the goods were purchased, can, under this branch of the defense, be condemned to the payment of the debt thereby created,—*Ravisies v. Stoddart, su-*

[Castleman v. Jeffries.]

*pra;* 2 Brick. Dig. 96, § 342.   As a plea of set-off, the fifth plea is bad, for the reason above stated.

The husband being trustee of the fund in controversy, any payment of the money made by Castleman to him, was admissible under the plea of payment, and was a good defense *pro tanto.*   So, if Jeffries delivered the checks in payment, or pursuant to the alleged agreement that the account contracted should be so paid, then any articles of comfort and support of the household, furnished by Castleman, which were suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law, would be referred to such agreement; and, to the extent of such purchases after she became the owner of the alleged statutory separate estate, they are a defense to the present action.   The Circuit Court erred in not receiving evidence on these several points, even though the fifth plea was rightly adjudged bad on demurrer.   And if the fifth plea be amended as above indicated, so as to make it a good plea of set-off, the evidence should be received in defense, notwithstanding it may not be shown the checks were delivered in payment, or pursuant to the alleged agreement of Mrs. Jeffries.

Lest we be misunderstood, we will add, by way of explanation, that if Jeffries delivered the checks as payment, under either of the hypotheses stated above, then such payment may be applied to the purchases made before Mrs. Jeffries' lands became statutory separate estate by being converted into money, as well as to purchases afterwards made.

It results from what we have said, that the judgment of the Circuit Court must be reversed, and the cause must be remanded.—*Tenn. & Coosa Railroad Co. v. Moore,* 36 Ala. 371, 391.

Reversed and remanded.