[Early & Lane v. Owens.]

# Early & Lane *v.* Owens.

*Creditors' Bill in Equity to set aside Voluntary Conveyance.*

68  171
104  212

68  171
106  415

68  171
119  345

68  171
125  532

1. *Voluntary conveyance; validity of.*—It is the settled law of this State, that a voluntary conveyance—that is, a conveyance founded only on a good, as distinguished from a valuable consideration—is fraudulent and void as against the existing creditors of the donor, without regard to the motives or intent which led to its execution, or to the amount and value of the other property retained by him.

2. *Same; rents, income and profits of wife's statutory estate, as consideration of conveyance from husband to wife.*—The husband is under no duty or obligation, legal or equitable, to account to the wife for the rents, income and profits of her statutory estate, received by him and converted to his own use, or remainingin his hands after payment of all family expenses; consequently, a conveyance of property by him to the wife, the consideration of which is such rents, income and profits received and used by him, or the unexpended surplus thereof, is voluntary, and void as against his existing creditors. (Overruling *Brevard v. Jones,* 50 Ala. 241.)

3. *Reformation of deed, on ground of mistake.*—As against *bona fide* purchasers for a valuable consideration without notice, a court of equity will not decree the reformation of a conveyance on the ground of mistake, because they have the legal title and an equal equity; but, as against judgment creditors, having no legal title, but only a lien, the correction of a mistake will be decreed.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 6th November, 1878, by Early & Lane, a mercantile partnership doing business in the city of New York, and several other mercantile partnership of that city. against Hastings E. Owens, his wife, Mary E. Owens, and others; and sought to set aside a deed by which said H. E. Owens conveyed certain lands and personal property to Jesse A. Corbitt, in trust for his wife, Mrs. Mary E. Owens, and a subsequent conveyance by said trustee to Mrs. Owens, on the ground that they were without valuable consideration, and were executed with the intent to hinder, delay and defraud the complainants as creditors of said H. E. Owens. The complainants sued as judgment creditors of Owens, Calloway & Granberry, a mercantile firm doing business in said county, of which said Owens was a partner; their several judgments, founded on debts contracted in 1874, being rendered in February and March, 1875, and executions thereon returned "No property found" before the bill was filed. The deed from said Owens to Cor-

bitt as trustee, a copy of which was made an exhibit to the bill, was dated the 15th February, 1875, and contained the following recitals, as to the considerations on which it was founded : " *Whereas*, I, Hastings E. Owens, party of the first part, was married to my present wife, Mary E. Owens, on or about the 1st December, 1869, in said county ; and whereas the said Mary E., at the time of said marriage, was the owner in her own right of certain real and personal property, under and by virtue of a deed recorded," &c.; "and whereas the rents and profits of said real and personal property which have come into the hands of said party of the first part, as trustee and husband, have amounted to over $3,000, over and above family support and expenses ; and whereas the said party of the first part, for the purpose of reimbursing the said Mary E., and investing part of said [amount] in her as her separate estate, have granted," &c. The deed conveyed a tract of land particularly described, said to contain about 213 acres, the equity of redemption in another tract containing 308 acres, which was subject to a mortgage for a debt of about $670, and several horses and mules ; and the trustee was authorized to " convey said property directly to said Mary E., if she desires it." The deed of said Corbitt, the trustee, to Mrs. Owens, a copy of which was also made an exhibit to the bill, was dated the 16th February, 1875, and conveyed the same property to her. The bill alleged " that said conveyance by said H. E. Owens was entirely voluntary, and without consideration, and was made for the purpose and with the intent to hinder, delay or defraud complainants in the collection of their said debts ; and said deeds were accepted by said Corbitt and said Mary E., they knowing the purpose for which said deeds were made." The prayer of the bill was, that the deeds be declared null and void, and that the property be subjected to the satisfaction of the complainants' judgments.

The bill alleged, also, that the debt secured by the mortgage on the 308 acres of land had been paid and satisfied, and the lands conveyed by said Owens and wife to Mrs. Clara Couric, the wife of Lucian Couric ; that a part of the purchase-money had been paid, and a promissory note given for the balance unpaid. Couric and wife were made defendants to the bill ; and it was prayed that, if this sale should be held valid, the balance due for the unpaid purchase-money might be condemned, and enforced by a decree foreclosing a vendor's lien.

Mrs. Owens answered the bill, denying all knowledge of the embarrassed condition of her husband or his said firm at the time the deeds were executed ; denying also the charges

of fraud, and insisting on the validity of the deed, as shown by its recitals, and as supported by the actual facts. She alleged that, prior to her marriage with said H. E. Owens, she lived in his family for about six years, and was engaged by him as a teacher at an annual salary of $250; that on the 25th November, 1869, on the eve of their marriage, in consideration of their intended marriage, and also in consideration of his indebtedness to her, which then amounted to $1500.17, he undertook and promised to convey to her a plantation known as the " Home place," and did on that day execute and deliver to her a deed for said lands; that by mistake of the scrivener, and without the knowledge of said H. E. Owens or herself, 213 acres of said tract, being the same afterwards conveyed to said Corbitt as trustee, were omitted from said deed; that the rents and profits of this plantation were received by said H. E. Owens after their marraige, and were used by him in defraying the expenses of their family, and in payment of his own debts; and that the conveyance to Corbitt, as trustee, was intended to make partial restitution for her moneys so used by him. She prayed that her answer might be taken as a cross-bill as to these matters, and that the deed of November 25, 1869, might be reformed so as to include said 213 acres of land.

On final hearing, on pleadings and proof, the chancellor sustained the validity of the deed to Corbitt as trustee (citing *Marshall v. Croom*, 52 Ala. 197, and *Tompkins v. Nickols*, 53 Ala. 197), and dismissed the complainants' bill; but he also held that Mrs. Owens, under her cross-bill, was entitled to a reformation of the deed of November 25, 1869, and rendered a decree accordingly. The decree dismissing the original bill, and the decree granting relief under the cross-bill, are now assigned as error.

WM. C. & J. W. OATES, for appellants.

JAS. G. COWAN, *contra.*

BRICKELL, C. J.—The consideration of the conveyance executed on the 15th day of February, 1875, by the judgment debtor, Owens, to a trustee, for the use and benefit of his wife, is therein recited as the rents and profits of the statutory separate estate of the wife, which the husband had received, and converted to his own uses, in excess of expenditures for the comfort and support of the family, and which he desired to invest for the use and benefit of the wife. The conveyance was executed when the husband was insolvent, on the eve of the judgments obtained by the appellants on

debts previously contracted. The principal question of the case is, whether the conveyance is voluntary, and fraudulent as to existing creditors, or whether the consideration is valuable, constituting the wife and trustee *bona fide* purchasers, taking in consequence of rights, legal or equitable.

It is the settled law of this State, that a voluntary conveyance is fraudulent and void as against existing creditors of the donor. No inquiry is made into the motives leading to its execution ; or whether, at the time, the donor had and retained other property, of greater value than would satisfy his existing debts and liabilities, absolute and contingent. All such conveyances fall within the proscriptive influence of the statute of frauds, because of their tendency to delay, hinder or defraud creditors.—2 Brick. Dig. §§ 99–118 ; *Bibb v. Freeman*, 59 Ala. 612. A voluntary conveyance rests on a *good*, as distinguished from a *valuable* consideration. It rests on considerations of love and affection, of generosity or benevolence, or of moral, as distinguished from legal duties or obligations. The *adequacy* of the consideration is not matter of inquiry ; that is material only as evidence of a fraudulent intent. Whether it is *voluntary*, and, of consequence, *void* at the instance of existing creditors, depends upon whether anything of value passes between the parties—whether the grantee sustains, or has sustained, detriment, or the grantor has derived benefit.—*Seward v. Jackson*, 8 Cowen, 406 ; *Jackson v. Peck*, 4 Wend. 301. Debts, legal liabilities, are things of value ; when they originate in contract, express or implied, they are supported by valuable, meritorious considerations ; and they ought not to be, and cannot be defeated, by transfers or conveyances, not resting upon considerations of equal dignity.—Bump on Fraud. Conv. 248 (1st Ed). The English statutes of frauds of 13th and 27th Elizabeth (from which our statute is borrowed, and is the same in effect), in more than one of its sections, excepted from its operation conveyances made *bona fide*, without frand or covin, upon *good* consideration. The construction of the term *good consideration* was, that it was the equivalent, the synonym, of *valuable consideration*, and could not be taken in its ordinary legal signification, as importing a consideration of love and affection, of generosity or benevolence, or of moral obligations, which, as between the parties, would support a conveyance.—*Killough v. Steele*, 1 Stew. & Port. 262.

The statute creating and defining the separate estate of a married woman, abrogates all the rights of the husband to her property, which attached at common law. The capacity of the wife to take property, notwithstanding coverture, is enlarged. All property owned by her at the time of marriage,

and all acquired by her during coverture, is her separate estate, by the terms of the statute, and now by express constitutional provision. While capacity to take is enlarged, and is that of a *feme sole*, her capacity to hold, or to dispose, is limited and circumscribed. The statute declares, all her property, during coverture, vests in the husband as trustee, and that he has the right to manage and control it, "and is not required to account with the wife, her heirs, or legal representatives, for the rents, incomes, and profits thereof; but such rents, incomes, and profits, are not subject to the payment of the debts of the husband."—Code of 1876, § 2706. Again, it is declared, "the husband has power to receive property coming to his wife, or to which she is entitled; and his receipt therefor is a full discharge, in law and equity."—Code of 1876, § 2710. The wife takes the property —the title to it, legal and equitable, resides in her. No title is imparted to the husband—it vests in him as trustee, with power to receive, and the right to manage and control it, freed from liability to account for the rents and profits. There is drawn by the statute a distinction between the property itself, the *corpus* of the estate, as it is uniformly designated in judicial decision, and its rents, income, and profits. It is the property—the *corpus* of the estate—the wife has full capacity to take, and to hold; while the rents, profits, and income, are taken and held by the husband. In the enactment of the statute, the legislature had in view the settled principle in reference to the wife's equitable separate estate, that if while living with her husband, without express dissent on her part, he was permitted to receive the income and profits of the estate, they were regarded as a gift to him, and there was no liability resting on him to account for them to the wife, or to her representatives.—*Roper v. Roper*, 29 Ala. 247.

As was said in *Weems v. Bryan*, 21 Ala. 308, the statutory provision is "but a slight extension of the rights of the husband, as they had been long established in courts of equity." The husband now takes the rents, income and profits, not by the consent, or on any presumption of a gift from the wife, but by operation of law, and as an incident of the estate the statute creates. Managing and controlling the property as husband, and as trustee, and largely an involuntary trustee, and for the purposes of management and control, the property vesting in him in subordination to the title of the wife ; if the statute had not freed him from liability to account for the rents and profits—had not taken from the wife the power by her dissent to intercept his right to them—the door would have been open to vexatious, distressing litigation, disturb-

ing the harmony and peace of the relation, resulting often in its practical severance, if not its actual dissolution.

While it is the policy of the statute to preserve the property of the wife as her separate estate—to abrogate the rights of the husband, which would at common law have attached to it, subjecting it to liability for his debts, as an incident of his ownership—it is not its policy to disturb the closeness, confidence, and harmony of the relation of husband and wife. As to the property, the husband stands in the dual relation of trustee and of husband; and it is in this relation he takes the rents, incomes and profits of the statutory separate estate. These form, in his hands, a trust fund, charged with the comfortable support and maintenance of the family, in keeping with their degree and condition in life. This is the only trust with which they are impressed, and it is a trust not expressly declared by the statute, but deduced by the construction judicial decisions have given it from an early period.—*Boaz v. Boaz,* 36 Ala. 334; *Hays v. Cockrell,* 41 Ala. 75; *Bennett v. Bennett,* 34 Ala. 56. That trust, according to the recitals of this conveyance, had been discharged, fully discharged, long before its execution. It was a surplus only of the rents, income, and profits, impressed with no trust, the husband had employed for his own uses and purposes, having discharged his whole duty in the dual relation of husband and trustee, he proposes to invest in the purchase of his own property for the benefit of the wife.

It seems manifest the statute confers on the husband, during the continuance of the relation of husband and trustee, the entire interest in the rents, income and profits of the statutory estate, and that the wife cannot claim them. *Pickens v. Oliver,* 29 Ala. 532; *Andrews v. Huckabee,* 30 Ala. 143; *Patterson v. Flanagan,* 37 Ala. 513; *Dent v. Slough,* 40 Ala. 518. Upon this theory of the statute, in *Whitman v. Abernathy,* 33 Ala. 154, it was held, that though she could recover slaves the husband had wrongfully sold, she was not entitled to recover hire for them while the husband was trustee. The words of the statute are plain, and their meaning cannot be mistaken; for the rents, incomes, and profits, he " is not required to account *with the wife, her heirs, or legal representatives.*" If he assumes to account for them, with the wife, or with her heirs or legal representatives, he assumes a duty and liability to which he cannot be compelled—from which he is expressly relieved. The duty and liability is assumed of his own mere choice—it is voluntarily assumed. If, accounting for them, he should make a promise to pay them to the wife, or to a trustee for her use, the promise

would be gratuitous, without legal consideration, and performance of it incapable of being enforced.—Chitty on Contracts, 50. The promise would be founded merely on his own considerations of duty, of beneficence, or of justice, and not on a legal liability or duty. Performance of all such promises is left to the moral sense and obligation from which they may spring; the law is satisfied with compelling performance of promises resting on a valuable consideration.

The conveyance, having for its sole consideration an accounting to the wife for the rents, income, and profits of her statutory estate, the husband had received, and from liability to account for which he was freed by the statute creating the estate, is purely voluntary. Nothing of value passed to the husband—he was not thereby freed or discharged from any liability; no compensation was made for any breach of trust he had committed; nor would the wife have suffered any detriment if the conveyance had not been made, or if the husband had not accounted in any way for the incomes, rents, and profits he had used. The husband was, in fact, accounting for the use and appropriation of his own property, and not for a conversion or maladministration of the property of the wife. In fact, it was a gift of his property to the wife, when he was insolvent, and pressed by creditors whose claims to the property, in law, equity, and good conscience, were of superior obligation to any claims founded merely in benevolence, or upon a sense of duty to the wife, because the title to the *corpus* of the estate, from which the income, rents and profits issued, resided in her.

In *Brevard v. Jones*, 50 Ala. 241, it was held, that the husband, though insolvent, could convey property to the wife, in satisfaction of the rents, income and profits of her statutory estate, he had received and appropriated to his own uses, and the conveyance would prevail over the demands of existing creditors. We are satisfied the decision is not founded in correct principle, is without any sound precedent to support it, and we feel constrained to overrule it. It proceeds upon/the false hypothesis, that the rents, income, and profits belong to the wife, equally with the *corpus* of the estate, while, as we have said, the statute carefully distinguishes between them—the wife having the title only to the *corpus*, and the husband the ownership of the rents, &c., during the continuance of the relation of trustee and husband. It proceeds upon another false hypothesis, rather intimated than directly asserted, that by the transaction the husband is simply making restitution of that which he has taken from the wife. Restitution, in itself, implies the restoration of that which has been unjustly taken; or compensation, the

making good of a loss which has been suffered. The hus-
band has taken nothing from the wife—she has suffered no
loss by his use and appropriation of the rents, income, and
profits, the family having, as in this case, been supported.
The decision, however, recognizes that accounting for the
rents and profits rests in the mere choice of the husband—
that on his part it is a mere act of grace, not of legal duty.
This being true, the accounting is voluntary; and promises
to pay, or conveyances or transfers for the purpose of pay-
ment, are also voluntary, having only a *good*, and not a *valu-
able* consideration to support them ; and as to existing credit-
ors of the husband, they are *void*.

I can conceive of nothing more dangerous and destructive
to the rights of creditors, more tempting to fraud, and more
corrupting, than would be recognition of the right of the hus-
band, after he had used and appropriated, as he had the legal
right to use and appropriate, the rents and profits of the
wife's statutory estate, voluntarily to account for them, and
in satisfaction of the voluntary liability to convey to her
property which ought to be applied in satisfaction of debts,
contracted, it may be, on the faith of his ownership of it.
The liability would be but seldom, if ever assumed, unless he
was in doubtful or failing circumstances ; and then it would
be almost invariably assumed, disappointing and defeating
the claims of creditors. If he will, the husband may assume
the liability, and may account ; the transaction, as between
him and the wife, would stand upon the same footing with all
other voluntary transactions—good and valid so far as exe-
cuted ; and as to creditors of the husband, it must share the
fate of other voluntary transactions—it is void and of no
effect.

There are numerous cases to be found in the books, in
which liabilities, not of legal or of equitable obligation, have
been assumed, and made the consideration of transfers or
conveyances interposed against the claims of creditors. They
have been uniformly denounced as contravening the statute
of frauds. In *Planck v. Schermerhorn*, 3 Barb. Ch. 644, an
assignment made by a husband, appropriating a part of his
property to satisfy a claim alleged to be due his wife, which
was incapable of enforcement in law or in equity, was
declared voluntary, and void as to creditors. Conveyances
by a parent, of lands given by parol to a child, have been
pronounced fraudulent as to creditors whose debts existed
when the conveyance was made, though not when the gift
was made.—*Davis v. McKinney*, 5 Ala. 719 ; *Hubbard v. Allen*,
59 Ala. 283 ; *Bibb v. Freeman*, *Ib.* 612. A child living with,

and rendering services to a parent, after he becomes of age, without contract creating the relation of master and servant, by no subsequent promise can the parent create a debt which will form the consideration of a conveyance or transfer of property having validity against the creditors of the parent. *Huck v. Stewart*, 8 Penn. St. 213 ; *Updike v. Titus* (2 Beasley), 13 N. J. Eq. 151. The rights and claims of creditors can be defeated, only by things resting upon like consideration with that which enters into and supports them—by things which are matters of right, not of favor or choice upon the part of the failing debtor. True, a debt barred by the statute of limitations, or by a discharge in bankruptcy, may, at the choice of the debtor, be revived by a subsequent promise, and become the consideration of a conveyance, which, if in all other respects *bona fide*, will prevail over the claims of other creditors; but, in these cases, a valuable consideration enters into the debt, and neither the statute of limitations, nor bankruptcy, extinguished it. Remedies for its recovery are barred, but these are revived by the new promise, and the debt stands supported by its original consideration. But, in this case, and the cases to which we have referred, there never was a legal debt or duty—there was no consideration of value ; and that consideration must be an element of every transaction, having validity as against creditors. The rents and profits remaining in the hands of the husband, or accruing to him, are exempt from liability for the payment of his debts. If he should make an investment of them for the wife, it may be his creditors could not complain—that they would have no rights which could be said to have been violated. If the investment was in his own property, the rents and profits would take the place of the property, cease to be such, and become subject to the payment of debts, as was the property in which they are invested. But, when he has appropriated, as he has the right, the rents and profits, they cease to be such —they are his property—no liability rests on him to account for them ; and for them he cannot substitute his property, upon which his creditors have just claims. . He is not investing property exempt from liability for debts, but he is converting property liable for the payment of debts into property not liable, upon a mere gratuitous consideration. This the law cannot tolerate, when the rights of just creditors are to be defeated. The deed to Corbitt as trustee, and the deed from him to Mrs. Owens, with the transfer of the debt of *Couric*, were purely voluntary, and, as to the appellants, fraudulent and void.

The reformation of the conveyance of November 25th, 1869, was properly decreed. The mistake was shown by full and

[Early & Lane v. Owens.]

satisfactory evidence. As against *bona fide* purchasers for a valuable consideration, without notice, a court of equity will not intervene for the reformation of written instruments, because, in addition to the legal title, they have an equity equal to that of the party complaining of the mistake. But, as against judgment creditors, who have no equity, and are without a legal title, having no more than a mere legal lien, the court will intervene for the correction of mistakes.—*Stone v. Hale*, 17 Ala. 557 ; *Larkins v. Biddle*, 21 Ala. 252.

The decree on the original bill must be reversed, and the cause remanded for further proceedings in conformity to this opinion ; and the decree on the cross-bill must be affirmed.

STONE, J.—In *Lee v. Tannenbaum*, 62 Ala. 501, we cited most of our decisions bearing on the question of the respective rights of husband and wife in the statutory separate estate of the latter. We also, in the same case, stated briefly the nature and extent of their respective rights, and we have no wish to repeat them. The majority of the court, differing with the Chief-Justice, adhere to what is there said, as the true interpretation of the statute. In *Boaz v. Boaz*, 36 Ala. 334, and in *Patterson v. Flanagan*, 37 Ala. 513, *Weems v. Bryan*, 21 Ala. 302, was very much shaken. In *Hayes v. Cockrell*, 41 Ala. 75, the authority of *Weems v. Bryan* was entirely overturned, and it was declared the husband had no property whatever in the rents, income and profits of the wife's statutory separate estate. Two clear principles of law vindicate the correctness of that ruling. *First*, he receives them as trustee, and may be removed from the trust, if he fails to apply them to the support and maintenance of the family. This is utterly incompatible with the idea that they are his property. Chancery does not intermeddle with a sane man's disposition of that which is his own. *Second*, the rents, income and profits are not liable for the husband's debts. Human ingenuity can not devise a plan by which property can be vested in one *sui juris*, and yet that property not liable to his debts.—*Rugely v. Robinson*, 19 Ala. 404. The doctrine declared in *Hayes v. Cockrell* has ever since been adhered to in this court, and we are not inclined to depart from it, or to re-establish *Weems v. Bryan.*

We do not think, however, that our different view works any change in the result of this case. While it was the moral duty of the husband to expend the rents, income and profits of his wife's estate for the comfort and support of the husband, he was not liable to the wife or her representatives therefor. This clause was inserted, not to vest the owner-

[Kendall v. Lassiter.]

ship in him, but to render impossible the ungainly sight of a wife suing her husband in the courts of the country, except for grave reasons. It was a step in promotion of domestic harmony, and exhibits a purpose to preserve that most sacred of human relations, as of far more importance to the public welfare, than the preservation of the profits of property. But, the husband's duty to expend the income and profits for the comfort and support of the family, amounted only to an imperfect obligation, and would not have supported a promise by him to pay. It is not a consideration deemed valuable in the law, which will uphold a conveyance by an insolvent debtor, against the claims of his creditors.

If he had declined to assert his marital rights, and had permitted his wife to receive the income and profits, no one could have complained of it. It was property his creditors had no claim on.—*Fellows v. Lewis*, 64 Ala. 343. Neither could they complain, if she, so receiving and holding the income and profits, afterwards invested the same in property in her own name. That is not this case.