# Gilkey *v.* Pollock & Co.

*Bill in Equity by Creditors of Husband, to set aside Conveyance in trust for Wife as Fraudulent.*

1. *Change of domicil; effect on property rights of husband and wife.* Where the matrimonial domicil of husband and wife is in Mississippi, and they remove to Alabama, bringing with them property belonging to the wife's statutory estate under the laws of the former State, a con-

[Gilkey v. Pollock & Co.]

test subsequently arising with the husband's creditors in Alabama, respecting a conveyance in trust for his wife, on the alleged consideration of an indebtedness for her property received and converted by him; in determining his liability for rents and profits, the courts of Alabama will give effect to the laws of Mississippi as to the portion there received and used, but will be governed by the laws of Alabama as to the residue.

2. *Rents and profits of wife's statutory estate; husband's liability under laws of Alabama and Mississippi.*—By the laws of Alabama (Code, § 2706), the husband is not liable to account to the wife, for the rents and profits of her statutory estate, received and appropriated to his own uses; and under the statutes of Mississippi, as in evidence in this case, his liability is limited to the receipts for the last year before he is called to account.

3. *Conveyance by husband, in trust for wife, on consideration of indebtedness on account of her statutory estate.*—A conveyance by an insolvent husband, in trust for his wife, founded on an indebtedness for property belonging to her statutory estate received and converted by him, is fraudulent in law as against his existing creditors, so far as the rents and profits of the property entered into the consideration; but, when it appears that the wife had no fraudulent intent, and did not participate in any fraud of the husband, the conveyance will be allowed to stand as security for the amount really and justly due to her.

4. *Expenses of family and plantation, as charge on wife's property under statutes of Mississippi.*—Under the statutes of Mississippi, in evidence in this case, the wife's statutory estate is liable to creditors for family expenses and supplies for her plantation; but the husband, having paid such expenses with his own means, can not claim to be reimbursed out of her estate; nor will such expenses, when so paid, be deducted from the *corpus* of her property received and converted by him, in stating an account against him at the instance of creditors, to ascertain the amount of his indebtedness to the wife.

5. *Mercantile or partnership business in name of wife.*—When the husband carries on a mercantile business in the name of his wife, goods purchased by him on credit do not become a part of her statutory estate; but if, having no means of his own, he invests her moneys in such business, or in the business of a partnership of which she is a member, the accruing profits, or her proportion thereof, will be regarded as profits of her statutory estate, when the claims of creditors do not intervene.

6. *Profits of wife's statutory estate; when considered as corpus.*—As to the profits accruing from the wife's statutory estate, when the husband has not used or converted them, if he invests them in the name of the wife, or permits her so to invest them, they become a part of the accumulated *corpus* of her estate, and can not be subjected by his subsequent creditors; but, if he has invested them in his own name, in another business, or in other property, this amounts to an appropriation and conversion, and the property becomes liable for his debts.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 15th August, 1882, by J. Pollock & Co., merchants and partners in trade doing business in the city of Mobile, as creditors of Walter M. Gilkey, against him and his wife, Wm. B. Stewart, and Charles McCarty; and sought to set aside, on allegations of fraud and inadequacy of consideration, a conveyance of his entire stock of goods, notes, accounts, &c., by said W.

[Gilkey v. Pollock & Co.]

M. Gilkey to Stewart, in trust for Mrs. Gilkey, and a subsequent transfer of the goods by Stewart to McCarty. The complainants' debt against Gilkey was evidenced by his two promissory notes for $1,270 each, dated May 9th, 1881, and payable, respectively, on the 1st February and the 1st May, 1882 ; and an open account for goods afterwards sold and delivered, at different times, amounting to over $950. The conveyance to Stewart, which was dated January 4th, 1882, and which was made an exhibit to Mrs. Gilkey's answer, contained the following recitals :

"The said W. M. Gilkey intermarried with Laura P. Stewart, party of the third part, in the year 1863, in Noxubee county, Mississippi. The said Laura P., at the date of her marriage, owned and possessed personal and real property ; and after said marriage, she and her husband sold the said estate, which constituted her separate estate under the laws of Mississippi, and which consisted of the following items : 290 acres of prairie land situated in said county of Noxubee, which was sold at $15 per acre, making $4,350 ; also, seven mules, sold at the average price of $150 each, making $1,050 ; 500 bushels of corn, or thereabouts, at 80 cents per bushel ; also, fodder, farming implements, gearing and wagons, of the value of about $200 ; all of which property the said Laura P. and her husband sold, in December, 1871, or in January, 1872, to R. M. Prewitt, which deed to said land is on record in Macon, Mississippi ; which said sums of money, amounting to about $6,000, was paid by said Prewitt to the said W. M., the husband of the said Laura P. ; and the accrued interest, to this day, on said amount so received by him, amounts to about $4,800, making an aggregate sum of about $10,000, which the said W. M. Gilkey, party of the first part, used and appropriated to his own uses, in carrying on a mercantile business, and in purchasing lands and other property, as hereinafter stated. . . During the year 1872, the said W. M., with the consent of the said Laura P., used and appropriated of her said estate the sum of $4,000, with L. W. Smith and Hulda E. Purnell, who each contributed the same amount, under the firm name of L. W. Smith & Co.; which business relation continued for one year, the said W. M. doing and transacting all the business in said firm for account of said Laura P. In 1873, another partnership was formed, to do a mercantile business, to wit : John M. Sprowl, Hulda E. Purnell, and said Laura P., under the firm name of Gilkey, Purnell & Co.; which firm did business in Memphis, during the years 1873–4, said party of the first part transacting all the business in said firm for and on account of his wife, the said

Laura P. In 1875, another partnership was formed, to do a general mercantile and advancing business, by and between said Sprowl and the said Laura P., under the firm name and style of Sprowl & Gilkey; which firm continued said business during the years 1875, 1876, 1877, and 1878, the said W. M. Gilkey transacting all the business in said firm for and on account of the said Laura P. During the transactions of said mercantile firms, in which the said Laura P. was interested, the said business was successful, and her statutory separate estate had greatly increased and accumulated, so that her said estate in the hands of her said husband was worth at least $15,000. In December, 1878, the party of the first part, W. M. Gilkey, and said Sprowl and Laura P., by her said husband, ceased to do business. During the year 1877 and 1878, in the transactions of the firm, said Sprowl insisted on the name of said W. M. Gilkey being *raised* (?) in the stock account, as partner alone with him, and the name of said Laura P. being dropped. On or about the 1st September, 1879, the party of the first part, having possession and control, individually engaged in the mercantile and advancing business in the town of Memphis, Alabama, and appropriated to his own use all the statutory separate estate of the said Laura P., and the accumulations thereof as before recited, to his individual use and purposes; and he is now indebted to the said Laura, in the sum of at least $15,000."

In consideration of the indebtedness thus recited, the grantor conveyed to said Stewart as trustee, "for the sole and separate use, benefit and behoof of the said Laura P. Gilkey," who was said Stewart's sister, all the stock of goods, wares and merchandise then in his store in said town of Memphis, with iron safe and furniture, "worth by estimate about $3,000, which is to be made more accurate by an inventory soon to be made and annexed to this deed by appraisers; also, all mortgages, crop-liens, notes, accounts, and *choses* in action, which are due and owing to said W. M. Gilkey by debtors who reside in either Alabama or Mississippi; and all claims or demands, of whatever kind, which may be due to the said Laura P. Gilkey, on a final settlement of partnership matters, with the estate of said John M. Sprowl, deceased, under an agreement or contract for basis of settlement for partnership matters, which is in writing, and all the interest of the said W. M. Gilkey therein; also, five mules, and fifteen bales of cotton; the whole of said property being greatly inadequate to the payment of said indebtedness from said W. M. to the said Laura P. The said W. M. Gilkey, by this conveyance, at

the request of the said Laura P., does what a court of equity would compel him to do ; and though the same is inadequate to pay said indebtedness, it is accepted by the said trustee, and by the said Laura P., in full satisfaction thereof." The conveyance provided, also, in the event of Stewart's death, that Mrs. Gilkey should have power to appoint another person in his stead ; and that the deed should be recorded in Pickens county, Alabama, and in Macon, Mississippi.

The bill alleged that said W. M. Gilkey, at the time this conveyance was executed, owed debts amounting to more than $12,000, and was in fact insolvent ; that the deed conveyed all of his property, and was executed with the intent on his part to hinder, delay and defraud his creditors ; that Mrs. Gilkey had knowledge of his insolvency and fraudulent intent, or knowledge of facts sufficient to charge her with notice thereof, and aided in consummating such fraudulent intent ; that the consideration of the conveyance was simulated, in whole or in part; and that if said Gilkey owed his wife anything, it was greatly less than the sum specified in the conveyance. It was alleged, also, that the transfer afterwards to McCarty was without consideration, and was made and received in furtherance of the alleged fraudulent intent on the part of the said W. M. Gilkey. The bill prayed an injunction to prevent any further sale or transfer of the goods, and the appointment of a receiver to take charge of them ; that the conveyances be declared fraudulent as against the complainants, and be set aside ; and that the property, or so much thereof as might be necessary, be condemned and sold for the satisfaction of their debt.

Separate answers were filed by said Gilkey and his wife ; each asserting the *bona fides* of the conveyance, the existence of the consideration as recited, and the truth of the facts therein stated, and denying any fraudulent intent. Said Gilkey admitted his insolvency at the time the conveyance was executed, and alleged that he had been carrying on business with his wife's means ; but Mrs. Gilkey denied any knowledge of his insolvency. ·

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants ; holding that, as to the rents and profits of Mrs. Gilkey's property received by her husband, and not invested in her name before the complainants' demand accrued, the consideration was simulated, and the conveyance voidable; but, further holding that Mrs. Gilkey was not guilty of any fraudulent intent, he allowed the conveyance to stand as a valid security for the amount justly

due to her, and ordered the necessary accounts to be stated by the register. From this decree Mrs. Gilkey appeals, and here assigns it as error, together with the instructions to the register as to the statement of the account.

E. D. WILLETT, and L. M. STONE, for the appellant.

R. H. CLARKE, *contra.*
(No briefs have come to hands of reporter.)

CLOPTON, J. - A material question is, whether the profits and income of Mrs. Gilkey's separate estate, as created by the statutes of Mississippi, which were received and appropriated to his own use by her husband, before and after their removal with the estate to this State, constitute a consideration sufficient to uphold, against his existing creditors, a conveyance of his property in payment therefor.

Mississippi was the matrimonial domicil; and under the laws, Mrs. Gilkey had a separate estate, consisting of real and personal property, which was converted into money in the latter part of 1871; and she and her husband removed to this State, bringing the money, and investing it here. It will not be contended, that the mere acts of change of domicil and removal of the property converted it into an estate other than such as is created by the statutes, either of Mississippi or of this State. Therefore, whether, after removal, the *status* and ownership of the separate estate be regarded as still impressed by the laws of the matrimonial domicil, or the money be regarded as a new acquisition coming under the operation of the laws of the actual domicil, is an immaterial question, when the effect and operation of the laws of both States are considered.

The statutes of Mississippi have been held to be enabling, and that the wife's power of disposition, or to charge or bind her separate property, or to incur debts to be satisfied out of it, is defined and limited by the statutes.—*Viver v. Scruggs,* 49 Miss. 705; *Nicholson v. Heiderhoff,* 50 Miss. 56. They do not create an equitable separate estate, such as equity creates independently of statute, with all its powers, rights, and incidents. The established rule of comity requires, that when transactions had under foreign laws, before change of domicil or removal of property, are brought before our courts, full effect in respect to their validity and legality, and the rights and liabilities of the parties, shall be given to such laws, so far as they do not contravene the positive law, or violate the public policy of this State.

[Gilkey v. Pollock & Co.]

*Castleman v. Jeffries,* 60 Ala. 380. The obligation of the husband to pay Mrs. Gilkey the income and profits received and appropriated while domiciled in Mississippi, is determinable by the laws of that State. But the rule of comity does not extend to the disposition or alienation of the property, or to the wife's power to bind it, or to contract; and as the income and profits accruing after change of domicil are new acquisitions, the liability of the husband for such profits will be governed by the laws of this State. *Castleman v. Jeffries, supra;* Story's Conf. Laws, § 383. Under the statutes of neither State was the husband under a legal liability for the income and profits, when the conveyance was made. By our statutes, he is expressly exempted from accountability; and by the Mississippi statutes, the liability only extends to the receipts for the last year next before he is called to account; and more than ten years had expired.—*Thompson v. Hester,* 55 Miss. 656.

The evidence is not sufficient to show an effective renunciation of the marital right to receive the income and profits. The conveyance is invalid, as to existing creditors, to the extent of the profits and interest which entered into its consideration: but, as the chancellor found that Mrs. Gilkey did not have a fraudulent intent, and did not participate in any fraud of her husband, it will be allowed to stand as security for the amount really and justly due.—*Early v. Owens,* 68 Ala. 171; *Thompson v. Hester, supra.* The decree of the chancellor is in harmony with this view.

The decree, however, directs the register to deduct from the *corpus* received by the husband in Mississippi the sums expended by him for the expenses of the farm and family, and to report the amount expended by him out of the *corpus* after it was brought into this State. The statutes of Misisssippi make binding on the separate estate of the wife all contracts made by her and her husband, or by either of them, for supplies for her plantation, and for family expenses. The provisions of the statutes are in favor of the creditor, who may have satisfaction out of the separate property, on failure of the husband and wife to pay for the supplies furnished. It could not have been intended to make the estate liable to reimburse the husband's payments for supplies made by him. It is his primary and legal duty to support his family, notwithstanding his wife may have a separate estate. He is authorized to receive the income and profits, to supplement his want of ability; to which purpose it is his moral duty to appropriate them; and in the absence of proof to the contrary, the law presumes that he has so appropriated them. If he is without ability, and the income

and profits are insufficient, it may be that, under the statutes of Mississippi, he would have an equity to be relieved from liability to his wife for the *corpus* necessarily so expended. But, if the expenses were actually paid out of the income and profits, or they were sufficient for the purpose, and were otherwise appropriated by the husband, the amount of the expenses should not be deducted from the amount of the *corpus* of her separate estate received and misappropriated by him.—*Rogers v. Boyd*, 33 Ala. 175.

The chancellor having stated in his opinion the basis on which the amount due Mrs. Gilkey may be ascertained, and as the register may regard this in the nature of directions in taking the reference, it is proper, in order to a correct accounting, to refer to the general rules, by which it may be ascertained what constitutes the *corpus* of the separate estate. The evidence satisfies us that the husband was without means, and that the money put in as part of the capital of the several mercantile firms was the separate estate of Mrs. Gilkey. While, in *Wilder v. Abernathy*, 54 Ala. 644, it was held, on account of the incapacity of the wife to acquire property by purchases on credit, that when the husband carries on a mercantile business in the name of the wife, goods purchased on credit do not become part of her statutory separate estate; the investment of moneys belonging to her separate estate in such business, with which goods are purchased, raises a different question as between her and her husband, there being no existing creditors of the husband complaining. In such case, when the business is carried on by a partnership of which she is a member, though goods may be subsequently purchased on credit, her proportion of the profits arising from the business may be regarded as the profits of her separate estate. Such investment, though the business may be superintended and managed by the husband, does not operate to divest its character as separate property, and convert it into the property of the husband.

If the husband, having no existing creditors to be prejudiced thereby, permits the wife to invest the income and profits, which he had not previously converted, in her name, and for her use, such acquired property becomes a part of the accumulated *corpus* of her separate estate.—*Wing v. Roswald*, 74 Ala. 346; *Early v. Owens, supra.* The evidence tends to show, that a large part of the profits of the mercantile business was invested in the purchase of real estate, the title of which was taken in her name, and in the name of Sprowl, the other partner. If this be true, and the title was so taken for her by permission of her husband, her in-

terest, under the rule above stated, became a part of the *corpus* of her separate estate; and if, on the settlement between them, Sprowl agreed to take her interest in such lands, paying her therefor in goods, or giving her an obligation for money, or both, such goods and obligation stand in stead of the lands, impressed with the *status* of her separate estate. We do not mean, however, that this rule is applicable to the Shackelford land, the title to which was taken in the name of her husband, and was not divested. The evidence does not satisfy us that it was intended by the husband that the title should be taken in her name, when he could have executed a deed at any time vesting the title in her, and suffered more than a year to pass, and the partnership to cease, without having done so. The inquiries of the register should have been directed to the ascertainment, not merely of the amount of the separate property brought into this State, but also what investments of the profits were subsequently made in the name of Mrs. Gilkey, and for her use; and what portion of the *corpus*, as thus accumulated, was appropriated by the husband to his own use. Such investment, once made, is beyond the husband's power of revocation; and not having been converted by him, belongs to the wife, and is not subject to his subsequent debts, there being no intent to defraud creditors.

As to the new firm organized in December, 1878, in which the name of the husband appears as a partner, the evidence does not show any investments of the profits in other property. But it may be remarked, that Mrs. Gilkey is entitled to be repaid, to the amount of the *corpus* of her separate estate invested in the preceding firms, which constituted a part of the capital of the succeeding firm ; but, so far as the profits of the previous business, not having been invested in other property, in the name and for the benefit of the wife, were carried into the new business, they should be regarded as received and invested by the husband for his own use.

These suggestions will probably suffice for the ascertainment of the amount really and justly due to Mrs. Gilkey. Of course, from the amount ascertained will be deducted any payments arising from collections of the *choses* in action, and from the property conveyed, or otherwise. We do not undertake to determine the facts, which can be more satisfactorily done by the register under proper directions from the chancellor.

Reversed and remanded.