(90 South. 798)

**FIELDS et al. v. DALE. (6 Div. 184).**

(Supreme Court of Alabama. Oct. 20, 1921.)

1. **Fraudulent conveyances ⟨277(3), 278(2) —Wife has burden of showing good faith and of establishing consideration for conveyance to her by insolvent husband.**

In a suit to set aside a conveyance by an insolvent husband to his wife, the burden is on respondents to overcome clearly and specifically the presumption of bad faith and to show a valuable consideration for the conveyance.

2. **Evidence ⟨80(2)—Common law presumed to prevail in other state.**

The common law is presumed to have prevailed in another state where the contract in suit was made, in the absence of any evidence to the contrary.

3. **Fraudulent conveyances ⟨95(9)—Husband and wife ⟨10(5), 47(3)—Proceeds of wife's realty passed to husband at common law, and therefore not consideration for conveyance by husband to wife.**

At common law the right and title to personal property of a wife passed to the husband, and the proceeds of the sale of the wife's realty made with the husband's assent constituted personal property unless different status therefor was defined by settlement or contract directing its further use, so that the use of such proceeds by the husband was not consideration for his conveyance to the wife.

4. **Fraudulent conveyances ⟨95(8)—Prenuptial promise held not consideration for postnuptial conveyance.**

A promise made before marriage to repay to a wife the sums advanced by her to the husband out of the estate of the husband's father, who was then alive, which was not shown to have been based at all on the consideration of marriage, and was not reduced to writing, and under which only small advances were made, was not a consideration sufficient to support a conveyance by the husband, who was insolvent, of property derived from his father's estate to reimburse her for transferring to her husband substantially all her property after the marriage.

5. **Descent and distribution ⟨72—Fraudulent conveyances ⟨77—Release of beneficiary's interest held supported by consideration.**

Where the beneficiary of an undivided one-fifth interest in an estate, which interest was worth not above $5,000, released or transferred his interest to the executrix in exchange for $1,700 cash, a good note for $1,600, and a cancellation of his indebtedness of $1,000 to the estate, the release or transfer was supported by adequate consideration and was valid, so that a creditor of the beneficiary could not set aside that transfer and a subsequent transfer by the executrix and the beneficiary to the beneficiary's wife.

Appeal from Circuit Court, Jefferson County; Horace Wilkinson, Judge.

Bill by Gertrude Dale against James Leon Fields and others to set aside certain con-

---

⟨For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

veyances as a fraud on creditors or to declare the conveyance general assignment for the benefit of creditors. From a decree granting relief, respondents appeal. Reversed and rendered.

Gertrude Dale procured judgment against James Leon Fields in a court of record in the state of Tennessee in September, 1916, in the sum of $7,500, on which a payment of $1,400 was made. James Leon Fields was the son of A. E. Fields, who died in Jefferson county, Ala., in 1916, leaving a will devising one-fifth interest in the estate to James L. Fields, subject to the life estate of the widow. On March 17, 1917, James L. Fields conveyed his interest in the estate of his father to his wife, Mrs. Lee King Fields. On October 23, 1916, James L. Fields executed another conveyance to his mother, Mrs. Anna M. Fields.

Harsh, Harsh & Harsh, of Birmingham, for appellants.

Complainant had no such interest in the estate of A. E. Fields, deceased, as would enable her to apply for an order requiring the executrix to give bond. Section .2541, Code 1907; 54 Ala. 12; 148 Ala. 337, 42 South. 450. The conveyance of March 17, 1917, was valid as against complainant. 76 Ala. 128; 123 Ala. 344, 26 South. 354. The burden was on complainant to show that Mrs. Lee King Fields participated in the fraud, if there was fraud. 99 Ala. 111, 10 South. 640; 79 Ala. 246; 71 Ala. 202. The contract of October 16, 1916, was valid as against complainant. 76 Ala. 128; 123 Ala. 344, 26 South. 354.

Tillman, Bradley & Baldwin and John S. Stone, all of Birmingham, for appellee.

The answer was such that the court could not have rendered any other decree. 132 Ala. 667, 32 South. 683; 125 Ala. 375, 28 South. 30. The parties were residing in Tennessee, and therefore the husband was entitled to all the personal property of the wife. 163 Ala. 390, 50 South. 1005; 121 Ala. 168, 25 South. 806, 77 Am. St. Rep. 43; 70 Ala. 271; 66 Ala. 377; 176 Ala. 48, 57 South. 483. The burden was on the Fieldses to show absence of fraud. 106 Ala. 414, 17 South. 547.

McCLELLAN, J. This bill was filed by the appellee, an existing creditor of J. L. Fields, an insolvent debtor, against J. L. Fields, Ann Madora Fields, individually and as executrix of the estate of A. E. Fields, deceased, and Lee King Fields, the wife of J. L. Fields. The object of the bill as finally amended is, in one alternative, to cancel certain instruments, viz: One executed October 23, 1916, transferring to Ann Madora Fields, as executrix aforesaid, J. L. Fields' undivided interest in the estate of the testator, his father; and one executed March 17, 1917, wherein the executrix, J. L. Fields, and Lee King

Fields undertook to invest J. L. Fields' wife, Lee King Fields, with J. L. Fields' undivided interest in the estate of A. E. Fields, deceased, the same interest purported to be affected by the mentioned writing executed October 23, 1918. The recited consideration of the instrument executed March 17, 1917, was that the transfer of J. L. Fields' interest in his father's estate should satisfy and discharge J. L. Fields' indebtedness of at least $3,700 to his wife, the respondent Lee King Fields, who married J. L. Fields in January, 1916, and resided then and thereafter until he entered the army at Tullahoma, Tenn. The ground for the cancellation of both instruments was that they were made to hinder, delay, or defraud complainant, who had, prior to the execution of both instruments, secured a large judgment against J. L. Fields in the courts of Tennessee. Failing relief on the theory stated, the amended bill seeks, alternatively, to have these instruments declared general assignments, under Alabama Code, § 4295, the averment being that a transfer of all of J. L. Fields' property was thereby undertaken. The trial court canceled both instruments in response to the first aspect of the amended bill.

[1] The answers of the respondents were but general denials of the allegations of fraud made against them; and the burden of proof rested upon the respondents to overcome in the evidence, clearly and specifically, the presumption of mala fides, and to show that a valuable consideration supported the insolvent husband's contracts with reference to his interest in his father's estate. Penney v. McCulloch, 134 Ala. 580, 33 South. 665; Prestridge v. Wallace, 155 Ala. 540, 46 South. 970, among others therein cited.

As appears, the complainant assailed the validity of two instruments, viz. the one to Lee King Fields of date March 17, 1917, and the one to the executrix of date October 23, 1916; it being essential to cancel or qualify both contracts if complainant was shown to be entitled to relief. Regarding the instrument of date March 17, 1917, in its aspect as a conveyance from J. L. Fields to his wife, Lee King Fields: After careful review of the whole evidence, in the light of the fact that the burden of proof rested on the respondent Lee King Fields, the debtor's wife, our opinion is that the court below was justified in its conclusion that Mrs. Lee King Fields had not discharged the stated burden of proof, and that the complainant was entitled to have the instrument of date March 17, 1917, canceled and wholly annulled. That J. L. Fields absorbed his wife's entire estate, inherited from her father previous to marriage, is indubitably established. However, the establishment of this fact does not itself vindicate the validity of the instrument of March 17, 1917, when assailed as it is by an existing creditor of an insolvent debtor. The

wife's claim is that just prior to her marriage to J. L. Fields he promised to reimburse her in the funds she advanced or loaned him, his father being then in life, and, so far as shown, without any knowledge of this rather premature assurance by J. L. Fields. It is not satisfactorily shown that J. L. Fields reaffirmed this promise after his father's death on May 18, 1916, nor is any allusion made to it in the instrument of date March 17, 1917. No note or other obligation was ever executed by J. L. Fields evidencing these asserted loans by his wife to him. The evidence of Mrs. Fields leaves in great doubt the amount she advanced him prior to their marriage. That the amount then actually advanced was comparatively small seems clear. On the other hand, the conclusion is inescapable that the larger proportion of his receipts from her was after their marriage. According to her testimony, she sold her real property, and, aside from what she and her husband consumed as board, etc., at her sister's hotel, she turned the remainder of the purchase money over to her husband, that he might discharge pressing demands.

[2] The agreement asserted by Mrs. Fields to have been made before marriage was entered into in Tennessee, where the parties resided. It was a Tennessee contract, governed by the common law, which, in the absence of any evidence to the contrary, is presumed to have there prevailed, and so notwithstanding there was included in its terms the husband's parol promise to transfer to Lee King, later becoming his wife, his interest in his then surviving father's estate in Alabama.

[3] Unless changed by statute, at common law the right and title to personal property of a wife passes to the husband; and the proceeds of a sale of the wife's realty, with the husband's assent, constitutes the proceeds personal property, unless a different status therefor was defined by settlement or contract directing its future use. Early v. Owens, 68 Ala. 171; Castleman v. Jeffries, 60 Ala. 380, 389, 390; Colbert v. Daniel, 32 Ala. 314, 327. In the circumstances indicated such personal property of the wife did not, at common law, afford a valuable consideration for the contractual postnuptial promise of the husband. Early v. Owens, supra; Bump's Fraud. Conv. (4th Ed.) § 280; 21 Cyc. pp. 1287, 1288.

[4] The prenuptial promise Mrs. Fields asserts evinced no purpose to make their marriage or their agreement to marry a part of the consideration for the loan then made. It did not purport to give assurance against future loans of the wife's money after marriage. It was not, as stated, reduced to writing. If it had satisfactory evidential support at all, Mrs. Fields' claims of indebtedness against her husband must be referred to the prenuptial promise she asserts. It can

have no support in a promise postnuptial, as respects her personal property, money, advanced while they were husband and wife. The only reasonable view projected by Mrs. Fields' evidence is that in the atmosphere of approaching marriage the husband's need of funds induced her, quite naturally, to advance money, each of them entertaining the mere hope and expectation that when his father died the husband might be able to restore the then comparatively small sum turned over to the husband. Mrs. Fields did not, in our opinion, establish the bona fides of the indebtedness she asserted against her husband. However, if we are mistaken in the view stated, there is another consideration that is conclusive against the validity of the instrument of date March 17, 1917; and the statement of our judgment in this connection will serve to present the grounds of our conclusion that the court below erred in canceling, annulling, the instrument (it is not exhibited in the transcript) of date October 23, 1916, whereby J. L. Fields "released" to the executrix his interest in his father's estate.

[5] The evidence is practically undisputed that on or about October 23, 1916, J. L. Fields, whose financial necessities were then great and pressing, received from the executrix $1,700 in cash and a "good note," for $1,600, assets of the estate, and a cancellation of his indebtedness of $1,000 to his father's estate, in consideration of the "release" or transfer of his interest in his father's estate. According to a fair estimate, the net value (in 1916) of a one-fifth interest in A. E. Fields' estate—considering the character of title (tax titles) his father held in the larger part of the Blount county lands, much of which was unimproved and inaccessible, the indebtedness existing against the estate, and the obligation imposed upon the estate by the terms of A. E. Fields' will—was not above $5,000. Hence the amount thus received by J. L. Fields for the "release" or transfer of his undivided interest in A. E. Fields' estate was not at all out of proportion to the value of his interest, if, indeed, it did not actually, in 1916, exceed its value. No invalidating fraud is shown to have affected the contract between the executrix and J. L. Fields. The recital by Mr. Tatum of what J. L. Fields said was the fraudulent design of his wife and himself in executing the later instrument of March 17, 1917—matter to which no objection appears to have been interposed by Lee King Fields—does not refer to the contract of October 23, 1916, between the executrix and J. L. Fields, and hence is without bearing or effect upon the earlier contract. The "release" or transfer of date October 23, 1916, is not invalid; and, being supported by contemporaneously paid consideration, it is, of course, not a general assignment.

If the instrument of date March 17, 1917,

is regarded as a distinct contract between husband and wife, J. L. Fields and Lee King Fields, omitting significance to the joinder therein of the executrix, Ann Madora Fields, J. L. Fields had no interest in his father's estate subject to transfer, assignment, or conveyance on March 17, 1917, he having theretofore, on October 23, 1916, "released" or transferred whatever interest he had in the estate of his father to the executrix thereof.

What right, title or interest, if any, Lee King Fields acquired from the executrix by the instrument of March 17, 1917, is a question not necessary to be considered or decided on this appeal. The contract of October 23, 1916, being valid and effective, the complainant is not entitled to the relief sought.

The decree appealed from is reversed. A decree will be here rendered denying relief to complainant and dismissing the amended bill.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.