[Birmingham Shoe Co., *et al.* v. Torrey, Curtis & Tirrell.]

# Birmingham Shoe Co., *et al. v.* Torrey, Curtis & Tirrell.

*Creditors Bill to Vacate Fraudulent Judgment, and to Require the Purchasers of Property Sold under it to hold the same as Trustees for the Creditors.*

1. *Remedy at law does not bar bill in equity to reach property fraudulently conveyed.*—"The existence of an adequate remedy at law in a particular case does not bar the creditor of his remedy by bill in equity to reach and subject property or the proceeds of property which has been fraudulently conveyed by his debtor, by holding the transferee answerable for the property or its value."

2. *Collusive confession of judgment; fraudulent purchaser of property sold under, what he cannot set up.*—The Birmingham Shoe Company, a corporation, confessed judgment to Steiner Brothers, another corporation; execution issued thereon, and at the execution sale Steiner Brothers purchased the property levied on and sold as the property of the shoe company; the complainants in a creditors bill averred that the confession of judgment was collusive and fraudulent; and that Steiner Brothers owned all the capital stock of the Shoe Company, the latter being a mere figure head, set up for fraudulent purposes; and sought to hold Steiner Brothers liable for the property purchased by them under the execution sale, and for other assets of the Shoe Company. Motion to dismiss the bill for want of equity, on the ground that by the allegations of the bill Steiner Brothers were the owners of the property before the execution sale. *Held,* whatever the fact be as to the ownership of the property, complainants dealt with the Shoe Company as a corporation; that company contracted these debts; that company at the time had this property; and complainants had a perfect right to treat that company alone as its debtor, and to treat this property as having belonged to it, and to subject it as the property of that corporation, though the fact may be and it may so appear in the bill that, that company was a mere figure head covering Steiner Brothers, who in reality constituted it; and further that the relation of the two corporations, as charged in the

bill, may well be looked to in support of the fraud averred in the bill.

APPEAL from the City Court of Birmingham.
Heard before the Hon. H. A. SHARPE.
The facts of this case are fully stated in the opinion.

CABANISS & WEEKLY, for appellants.—Complainants had a plain and adequate remedy at law.—*Cahaelan v. Monroe, Smaltz & Co.*, 56 Ala. 303; *Hall v. Griffin*, 24 So. Rep., 27; *Espy v. Comer*, 76 Ala. 501; *Pate v. Hison*, 104 Ala. 599.

H. K. WHITE, *contra.*—If there is any equity in favor of complainants shown by any of the facts set out in the bill the motion to dismiss should not prevail.—*Hooper v. S. & M. R. R. Co.*, 69 Ala. 529; *Seals v. Robinson & Co.*, 75 Ala. 363; *Glover v. Hembree*, 82 Ala. 324; *Scholz v. Steiner Bros.*, 100 Ala. 148; *Tillman v. Thomas*, 87 Ala. 321.

McCLELLAN, C. J.—This is a creditors' bill filed by the individuals composing the firm of Torrey, Curtis & Tirrell, and others, against the Birmingham Shoe Co., a corporation, Steiner Bros., a corporation, and others. Complainants' debts were due prior to the transactions between said corporations which are complained of. The bill alleges that the Birmingham Shoe Co. was indebted to the complainants in the several sums stated, and that said Shoe Company being hard pressed by its creditors collusively and fraudulently confessed a judgment to Steiner Bros. for an amount equal to the value of all its assets, that the pretended debt upon which said judgment was confessed was simulated and that the confession was made, the property immediately levied upon and sold and purchased by Steiner Bros., with the intent on the part of the debtor and Steiner Bros. to hinder, delay and defraud complainants and other creditors of the said Shoe Company. It is further alleged that Bach, the manager of the Shoe Company, was without authority to confess said judgment, and that the same for this reason also is void.

The bill also contains the following paragraph: "Orators are informed and believe, and therefore charge, that the said Steiner Bros. were at the time judgment was confessed in their favor for $6,037.02, the real owners of all the capital stock and property of Birmingham Shoe Co., and had been such real owners ever since said company was incorporated on the 27th day of November, 1893. The $5,000.00 capital stock with which said company was incorporated was furnished by B. Steiner, S. Steiner and Leo K. Steiner, who are brothers, and the said Leo K. Steiner was the holder of a portion of the capital stock of said Birmingham Shoe Co., when it was incorporated, and was an officer and director in the company. He afterwards transferred his stock, as a matter of convenience, to J. Levy, who is a protege of Steiner Bros., and who operates and has operated for several years a livery stable owned by Steiner Bros., called "City Stable," on First avenue, between 21st and 22nd streets, Birmingham, Alabama. The said Bach is a close relative of Steiner Bros. and is another protege of theirs. He clerked for them several years at their store in Hamburg, Hale county, Alabama, and afterwards operated a store for them at Boligee, Greene county, Alabama, for a few years prior to the time he came to Birmingham in November, 1893, when the Birmingham Shoe Co. was organized. The entire capital stock of said Birmingham Shoe Company, $5,000.00, was furnished in money by Steiner Bros., but they had the nominal ownership of 98 of the 100 shares of said stock of $50 par value, amounting to $4,900.00, placed in the name of J. Bach, though it was well understood between them and Bach that all receipts of money from said business should be deposited in Steiner Bros'. bank, and that Steiner Bros. should have all the profits arising from said business, except the amounts which it was agreed that Bach should draw for his services as manager of the said business. During its whole existence the Birmingham Shoe Co. sold its goods exclusively for cash and deposited its receipts in the bank of Steiner Bros. These deposits were only checked against by said Birmingham Shoe Co. to pay the expenses of running its business, and for goods to replenish its stock. The profits were always greater than expenses, until within the few months preceding the failure of said Shoe Company, when business was gener-

ally very dull, and the legitimate profits became so small that the parties interested in said business concluded that it would be more profitable to fail. To this end they commenced, in summer of 1896, to buy large quantities of goods on credit from every shoe manufactory and wholesale dealer who would extend them credit. During the period of to-wit: 90 days preceding the confession of said judgment in favor of Steiner Bros., the Birmingham Shoe Co. purchased and received goods (on which nothing was paid) of the invoice value, of to-wit: $11,561.31 from 27 different manufacturers and wholesale dealers in 19 different cities in 10 different States of the United States, said cities extending as far west as St. Louis and as far east as Aurora, Maine. The invariable method of obtaining credit for these goods which were so purchased from complainants in this bill, was substantially as follows: The said Bach would write letters to them, signing the same "Birmingham Shoe Co., J. Bach, Mgr." and refer them to 'Steiner Bros., Bankers,' who, when inquiry was made of them in pursuance of said references, would recommend the Birmingham Shoe Co. as highly worthy of credit, perfectly solvent, and very prompt in meeting its obligations. Upon such a flattering report from the 'Banking House of Steiner Bros.,' the credit solicited and recommended was invariably extended. During the period of about one month preceding the retirement of the Birmingham Shoe Co. from the active marts of competitive trade, cases of shoes came rapidly pouring in as from a 'horn of plenty' which had been rubbed with the 'wonderful lamp' of a Steiner Bros., Bankers' recommendation, and the Birmingham Shoe Co. branched out into a wholesale business, which was conducted without warerooms, or traveling salesmen, by simply re-marking the cases of shoes as they were received and re-shipping them to various retail dealers in Bessemer, and other towns in the vicinity of Birmingham; but one important difference from the manner in which these goods were bought, was prudently observed by said Birmingham Shoe Co., when these goods were sold, to-wit: that whereas all these goods were bought from the manufacturers *on credit,* they were sold by the said Birmingham Shoe Co.

strictly *for cash.* Thus Steiner Bros., Bankers, with a
rare versatility of genius for affairs, operated said shoe
business for their own benefit under the name of Bir-
mingham Shoe Co., while the said J. Bach, J. Levy and
L. Levy, who were nominally the board of directors and
stockholders of said corporation, owned no real interest
therein, but were in fact mere employés of Steiner Bros."

There is an alternative averment in the bill, but it has
no bearing on the question now presented.

The prayer is that Steiner Bros. be held as trustees *in
invitum* of the property purchased by them at the execu-
tion sale, and be required to account to complainants for
the value thereof, etc. The respondents moved to dis-
miss the bill for want of equity. That motion was de-
nied, and from the order overruling it, this appeal is
prosecuted.

The theory upon which respondents based their
motion is thus stated by their counsel: "The ground on
which the motion to dismiss the bill for want of equity
was predicated, is that by the averments of the bill
Steiner Bros. were the owners of the property of the Bir-
mingham Shoe Co. and hence complainants could not
have been prejudiced by any dealings which Steiner
Bros. may have had with reference to such property.
And it appears, moreover, from the averments of the bill,
that Steiner Bros. were the Birmingham Shoe Co., and
that they operated the business for their own benefit un-
der that name, while the nominal directors and stock-
holders of said Birmingham Shoe Co. owned no real in-
terest therein, but were in fact mere employes of Steiner
Bros."

It is clear, of course, and not denied for appellants
that the bill without the averments of the paragraph we
have quoted states a perfectly good case of equity juris-
diction under section 818 of the Code. And it is thor-
oughly well settled that the existence of an adequate
remedy at law in a particular case does not bar the credi-
tor of his remedy by bill in equity to reach and subject
property or the proceeds of property which has been
fraudulently conveyed by his debtor, by holding the
transferee answerable for the property or its value.
Nor is it of consequence that the bill may show that
Steiner Bros'. dealings with this property could not
prejudice the complainants for that it belonged to them

before they bought it at the execution sale. Whatever the fact be in this connection, complainants dealt with the Birmingham Shoe Co. as a corporation. That company contracted these debts. That company at the time had this property. And complainants have a perfect right to treat that company alone as its debtor and to treat this property as having belonged to it, and to subject it as the property of that corporation, though the fact may be, and it may so appear by the bill that that company was a mere figure-head covering Steiner Bros. who in reality constituted it. Not only so, but the relations averred in the bill between Steiner Bros. and the Shoe Company may well be looked to in support of the fraud averred in respect of the confession of judgment and the passing of the property into Steiner Bros. under that judgment. The question here involved is really decided against the appellants in the case of *Weingarten et al. v. S. Marcus et al.* at the present term; and upon the views we have expressed and that case, the decree overruling the motion to dismiss the bill for want of equity must be affirmed.

Affirmed.