[Penney v. McCulloch *et al.*, and McCulloch *et al.* v. Penney.]

*Stepney,* 58 Ala. 365; *Bender v. Meyer,* 55 Ala. 576; *Taylor v. Jones,* 52 Ala. 78; *Kelly v. Moore,* 51 Ala. 364; *Winnemore v. Matthews,* 45 Ala. 449; *Douglas v. Beasley,* 40 Ala. 142; *Childress v. Mann,* 33 Ala. 206. Moreover, the complaint claims in the alternative, "twelve hundred pounds of lint cotton, or its alternative value, one hundred and eight dollars, the rent of a tract of land" etc. and in so doing, it cannot be said to be a claim for either the cotton in specie or the money.

The judgment will be reversed and the cause remanded.

# Penney *v.* McCulloch, *et al.*
## and
## McCulloch *et al. v.* Penney.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Fraudulent conveyance; sufficiency of answer to bill; burden of proof.*—Where a bill is filed by existing creditors of an alleged insolvent partnership against the partners and their grantee, seeking to set aside a mortgage of substantially all the partnership property as constructively fraudulent as against complainants' rights, an answer filed by such grantee, containing only a mere general denial of the allegations of fact cnarged in the bill, is insufficient to relieve respondent of the *prima facie* case made against him; the burden resting upon him of overcoming the presumption of unfairness and *mala fides* both by a clear and distinct response to each averment of the bill and by clear proof.

2. *Same; burden of proof as to consideration of alleged fraudulent conveyance.*—Where a bill is filed by existing creditors of an insolvent partnership against the partners and their mortgagee, seeking to set aside the mortgage as in fraud of complainants' rights, proof by complainants of the existence of their debts devolves upon the respondent mortgagee the burden of proving a *bona fide* debt and that the mortgage was

[Penney v. McCulloch *et al.*, and McCulloch *et al.* v. Penney.]

given to secure same, untainted by any fraud.

3. *Same; when bona fide debt not shown.*—On a bill filed by existing creditors of a partnership to set aside a mortgage as fraudulent, respondent—the alleged fraudulent grantee—proved as the consideration or his mortgage the payment by him of certain sums to certain persons at the instance and request of the partners, but failed to prove that the amounts so paid were correct and justly owing by the partnership. *Held*: That he had not discharged the burden resting upon him of showing a *bona fide* valuable consideration for said mortgage.

4. *Mortgage of partnership property, when constructively fraudulent; liability of mortgagee to partnership creditors.*—A partnership in failing circumstances executed a mortgage or substantially all the partnership property (personalty), due one day after date, to secure a recited indebtedness to the mortgagee, the consideration of which consisted in part of sums paid by such mortgagee to third persons at the instance and request of the partnership, and in part of debts owing to the mortgagee by the members of the firm individual, and which the partners by the partnership agreement assumed to pay, and in part of a certain sum to be paid the mortgagee for services in looking after the mortgaged property. The property mortgaged greatly exceeded in value the recited mortgage indebtedness. Prior to the giving of the mortgage the mortgagors had given to the mortgagee two bills of sale on the same property to secure the same indebtedness. The mortgage was filed for record on the day it was executed and provided for foreclosure at public or private sale. After the execution of the mortgage and for several months after the law-day the property was in mortgagee's store, to which he had a key, but the mortgagors also had access to it, and by verbal agreement with the mortgagee they were to ship and sell the property in his name. Some of it they did sell in his name and some they sold clandestinely in their own name, and the mortgagee also sold some. The mortgage was not foreclosed by public sale. *Held*: That the mortgage was constructively fraudulent as to existing creditors of the partnership, and that the mortgagee was liable to them as trustee for the value of that part of said property appropriated or converted by the mortgagee to his own use, but not for the other property.

APPEAL from Morgan Chancery Court.
Heard before Hon. WM. H. SIMPSON.
The bill was filed by W. B. McCulloch and others as

existing creditors of the Co-operative Furniture Company (or Factory), a partnership composed of Miller & Palmatier, and sought to set aside as fraudulent a mortgage executed by said partnership to J. E. Penney, who was made a party defendant.

The opinion shows the material averments of the bill. The bill prayed that the several debts of complainants be ascertained; that the mortgage be declared fraudulent and void and be set aside as to complainants; that said Penney be required to account and to pay into court for complainants the value of the property mentioned in said mortgage which had been appropriated or converted by him to his own use, and that the remaining property mentioned in the mortgage, which he had not used, converted or appropriated, be condemned for sale for the satisfaction of complainants' debts. There was also a prayer for general relief.

The answer of Penney merely denied the averments of the bill and required proof thereof, except that it admitted the residence of the parties and that said partnership became indebted to respondent in the sum of $525.94, to secure which it executed the mortgage described in the bill. The demurrers to the bill, incorporated in the answer, were not insisted on in argument, and hence it is not deemed essential to set them out.

In addition to the evidence noted in the opinion, the record shows the following evidence as to the various items constituting the consideration for Penney's mortgage: Penney and Bibb testify that Penney paid Miller's house rent during the months of November and December, 1895, amounting to $40. And Palmatier testified: "It was agreed between Miller and myself that we would both pay our house rent and grocery bill in that way. We agreed that this might be paid by Penney to Bibb and charged to the Co-operative Furniture Company. When we first went into business we agreed that we would not any of us draw out of the company any more than was necessary to pay our house rent and grocery bill. At the time we gave Penney the mortgage we owed him $75 paid Lovin, $75 paid J. L. Brock, $40 paid

Bibb & Hoff, $50 for glass, $50 for rent of one building and services, $44 rent for Palmatier, $25 for cow, $10 paid Hudnall. The Co-operative Furniture Company was indebted to Lovin in that amount and more, too, for supplies and groceries for the hands. I suppose I saw as much as $40 worth of goods supplied to the men. Lovin let the men have what we told him to. Miller wrote the orders and gave Lovin credit for it and charged the hands with it. I do not know whether Penney paid them or not, but they gave us credit for the amounts. I saw the entry on Lovin's book where he gave us credit for the amount paid by Penney. Penney paid J. L. Brock $75 for the Furniture Factory. That was for orders given on Brock. Miller and myself both asked Penney to assume the payment of the $75 to Brock. It was for a debt contracted or about to be contracted with Brock for the benefit of the Co-operative Furniture Company. I did not see Penney pay Brock. Penney paid one Hudnall $10 for the Company. Hudnall was one of the employes of the Furniture Company."

Penney's testimony as to the three items of Brock, Lovin and Hudnall is as follows: "I gave an order to Brock for $75 and charged Miller & Palmatier up with the $75 at the time I paid it. I paid $75 less 47 cents which was credited back to Miller & Palmatier. They were owing Lovin for groceries. I paid Lovin $75 for the Co-operative Furniture Company at Miller & Palmatier's request. They said Lovin was pushing them for pay for groceries he had furnished their hands. Miller & Palmatier requested me to settle this amount with Lovin, which I did. The paper shown me is the receipt I got from Lovin at the time I paid the account for the Co-operative Furniture Company. I paid Miller $10 in Bibb & Hoff's bank, and he went right outside and paid it to Hudnall, who was waiting to get it. That was for labor. I did not see Hudnall perform the labor."

Hudnall, Brock and Lovin were not examined.

The mortgage was dated November 29th, 1895, and was due one day after date, and provided for a foreclosure, in case of default, at public or private sale. It was filed for record on the day it was given. It covered practi-

cally all the firm's property, and the firm was insolvent when the mortgage was given. Penney had access to their books. The evidence showed that the firm rented one of Penney's stores, the rent of which constituted part of the consideration of the mortgage. The property mortgaged remained in the store after the execution of the mortgage and after the lawday, Penney having the key to the store. The mortgagors had an agreement with Penney that the furniture was to be shipped in Penney's name to different markets to be found by the mortgagors, and Penney was then to consent to the sales negotiated by them. There was evidence that some of the property was sold by Penney and some by the mortgagors with his knowledge and in his name, and some they sold clandestinely without his knowledge, and some was still on hand when the bill was filed in April, 1896, and at the time of the final decree.

On submission on the pleadings and proof, a decree was rendered declaring complainant's entitled to relief, holding the mortgage constructively fraudulent as against complainants and setting it aside for such fraud, and holding Penney liable for the value of the property which he had up to the time of final decree appropriated or converted to his own use. This value was less than the total amount of complainants' debts, but this property, together with that which has been disposed of or converted by Miller & Palmatier and that which remained on hand unsold, was more than said entire debts.

Respondent Penney appeals, assigning as error the said action of the court, and complainants also assign as error the failure of the decree to charge Penney with the value of the property remaining unsold and that sold or converted by Miller and Palmatier.

D. W. SPEAKE and PAUL SPEAKE, for appellant Penney.—The delay of Penny in foreclosing the mortgage by public sale was not a badge of fraud.—*Pugh v. Harwell*, 108 Ala. 486.

The burden of explaining the mortgagors' continued possession of the property, so as to make that fact con-

sistent with *bona fides,* was discharged by showing that they held it or had access to it, not as their own, but as agents for the mortgagee, for his convenience, or for purpose of sale on his account.—*Troy Fert. Co. v. Norman,* 107 Ala. 667; *Ullman v. Myrick,* 93 Ala. 537; *Mayer v. Clarke,* 40 Ala. 269; *Dearing v. Watkins,* 16 Ala. 25; *Bluthenthal v. Magnus,* 97 Ala. 530.

The mortgage was not rendered void because there was no change of possession—the recording being regarded as a substitute for the change of possession. *Howell v. Carden,* 99 Ala. 100; *Cooper v. Bank,* 99 Ala. 119; Jones on Chat. Mort., § 329.

The sales made by Penney and Miller with his consent were a foreclosure, as he was authorized to sell at public or private sale.—Jones on Chat. Mort., (3d ed.), §§ 791, 793, 797; 8 Am. & Eng. Enc. of Law, (1st ed.), 185, § 1.

General notoriety of the insolvency of the mortgagors was not admissible to prove the fact of such insolvency, but only to prove the mortgagee's knowledge of it. *Hodges v. Coleman,* 76 Ala. 103.

All the assets of the partnership being liable to the satisfaction of their debts and being sufficient to satisfy all their liabilities, they were not insolvent, although they did not have money in hand to meet them as they matured.—*Smith v. Collins,* 94 Ala. 394.

The evidence offered was sufficient to sustain the Lovin, Brock and Hudnall items as part of the consideration for the mortgage, and showed said items to be *prima facie* valid.—*Bank v. Dickinson,* 107 Ala. 266; *Howell v. Carden,* 99 Ala. 100; *Page v. Francis,* 97 Ala. 379.

The individual rent claims against Miller and Palmatier, having been assumed by the partnership prior to the creation of complainants' debts, became partnership debts, the assumption of which by Penney formed a valuable consideration for his mortgage.—*Bank v. Dickinson,* 107 Ala. 265; *Teague v. Lindsay,* 106 Ala. 266.

Fraud is never presumed, but must be proved by the party asserting it.—3 Brick. Dig., 510, § 34; *Smith v. Collins,* 94 Ala. 394.

When a conveyance is held constructively fraudulent

[Penney v. McCulloch *et al.*, and McCulloch *et al.* v. Penney.]

because of the inadequacy of the consideration paid, it may be allowed to stand as security for the actual consideration paid, if the grantee did not participate in the fraudulent intent of the grantor.—*Campbell v. Davis*, 85 Ala. 56; *Harwell v. Carden*, 99 Ala. 100; *Cooper v. Bank*, 99 Ala. 119; *Kelly v. Schillinger*, 102 Ala. 336.

The theory and allegations of the bill would not justify a decree such as would be justified in a case where *actual* (as distinguished from *constructive*) fraud were proven.—*Meyer v. Masters*, 119 Ala. 186.

J. M. CHILTON and OSCEOLA KYLE for appellant Penney. Defendant by his answer denied the existence of a valid debt in favor of complainants. It is only where defendant admits the existence of a valid debt in the hands of complainant at the date of the transfer, that he is called on to make in his answer specific averments as to the amount of his debt, its origin and the circumstances attending it.—*Robinson's case*, 93 Ala. 70.

Complainants' bill was not so framed as to justify a decree against Penney, if the mortgage be held actually fraudulent, for more than the value of the property which he had actually converted. Under a prayer for general relief, relief cannot be had which is distinct from and independent of that which is specially prayed. *Thomason v. Smithson*, 7 Port. 144; *Charles v. Dubose*, 29 Ala. 367; *Driver v. Fortner*, 5 Porter, 10; *Florence Mch. Co. v. Zeigler*, 58 Ala. 221; 2 Beach Mod. Eq. 790.

Damages for permitting or aiding the debtor by means of a fraudulent conveyance, in dissipating or converting the property, cannot be recovered in a court of equity.—Waite on Fraud. Con. (3d ed.), §§ 51, 176; *Adler v. Fenton*, 24 How. 411; *Wiggins v. Armstrong*, 1 Johns. Ch. 145; *Cramber v. Blood*, 68 Barb. 163, 48 N. Y. 684; *Murphy v. Briggs*, 89 N. Y. 446; *Clements v. Moore*, 6 Wall. 299; *Greenwood v. Marvin*, 111 N. Y. 434.

E. W. GODBEY, *contra.*—The assumption by the firm of individual debts, and Penney's assumption thereof after complainants' debts had accrued, and the insol-

vency of the firm, render Penney's mortgage fraudulent. *Pritchett v. Pollock*, 82 Ala. 168; *Jackson v. Durfey*, 18 So. Rep. 456.

The answer to the bill is not sufficiently full, being a mere general denial.—*Cartwright v. Bamberger*, 90 Ala. 405; *Thompson v. Tower Mfg. Co.*, 104 Ala. 140; 1 Brick. Dig. 715, § 1096.

Penney was a guilty participator in the fraud, by reason of having access to debtor's books, and the general notoriety of their insolvency, and his knowledge of mortgagor's surreptitious shipments of furniture.—*McDowell v. Steele*, 87 Ala. 493; *Age Herald v. Potter*, 19 So. Rep. 725; *Levy v. Williams*, 79 Ala. 179; *Chipman v. Glennon*, 78 Ala. 273.

Penney's contradictions regarding the bill of sale, and its ostensibly unconditional nature, while really a security, render it and the mortgage fraudulent and void. *Sims v. Gaines*, 64 Ala. 392; *Tyron v. Flournoy*, 80 Ala. 321; *Owens v. Hobbie*, 82 Ala. 466; *Steiner v. Scholze*, 21 So. Rep. 428; *Muskegon v. Phillips*, 21 So. Rep. 822.

The maturity of the mortgage the day after its execution, while it was agreed that the mortgagors were to still operate the factory, complete the goods, which were then in crude state, find purchasers therefor, ship them, get Penney's consent to the sales, pay him $50 per month for rent and services; the provision for the payment of interest semi-annually, clearly show a secret agreement from the beginning, *dehors* the mortgage, for the continued retention of possession and reservation of benefit by the mortgagors, and an indefinite and lengthy postponement of the law-day to Penney's great advantage in rent and service charges.—*Paige v. Francis*, 97 Ala. 379; *Ravisies v. Alston*, 5 Ala. 279; *Somerville v. Norton*, 5 Yerg. 550; *Birmingham Dry Goods Co. v. Kelso*, 18 So. Rep. 35; *Reynolds v. Welch*, 47 Ala. 200; *Wiley v. Knight*, 27 Ala. 336; *Bank v. Brewer*, 71 Ala. 574.

The Brock, Lovin and Hudnall claims, as items of Penney's debt, were not sufficiently proven.—*Paige v. Francis*, 97 Ala. 379.

The value of the property converted or appropriated

by Penney, and that converted by the mortgagors, and of that on hand in Penney's possession, being greater than the whole amount of complainants' debts, the decree should have charged Penney with the full amount and decreed payment in full of their debts; such relief being authorized under the prayer of general relief. *Smith v. Cockrell*, 66 Ala. 64; 1 Brick. Dig. 407, §§ 928, 930; *Munford v. Pearce*, 70 Ala. 452; 3 Enc. Pl. & Pr. 350.

TYSON, J.—The bill in this case was filed by the complainants as creditors of Miller and Palmatier against them and Penney to have declared fraudulent and void a mortgage executed by them to Penney upon certain personal property conveyed by it and to require him to account for the value of the property appropriated or converted to his own use; and prayed a personal decree for such value; a condemnation to sale for the satisfaction of the complainant's debts and costs, the property not used, converted or appropriated by him, and for general relief.

The allegations of facts upon which the complainants based the relief thus prayed for, were in substance, that each of the complainants were prior to the 29th day of November, 1895, existing creditors of Miller and Palmatier who had for some months prior to that date been engaged as partners under the name of the "Co-operative Furniture Company," sometimes called the "Co-operative Furniture Factory" in the manufacture of various kinds of furniture for sale; that on the 29th day of November, 1895, they executed to Penney the mortgage assailed to secure a recited and alleged indebtedness of $525.94 upon certain articles of their partnership property which they then owned or was held in trust for them, a part of which property conveyed by the mortgage was stock in trade, a part was raw material in process of manufacture into furniture and a part was machinery and tools. That the partnership was badly embarrassed financially and there was no consideration for the mortgage; and since the execution of the mortgage Penney had taken possession of the property described in it, a portion of which

he converted and disposed of, a portion he allowed others to convert and dispose of, and the remainder he still holds in undisputed possession. Just what portion was disposed of by him or he allowed others to dispose of or what portion he had in his possession at the filing of the bill, complainants did not know and were unable to state.

The respondent Penney answered the bill, incorporating in his answer four grounds of demurrer, which was overruled by the chancellor. This demurrer is so manifestly untenable we will not consider it. The answer contains nothing but a mere general denial of the allegations of fact charged in the bill and was utterly insufficient to relieve the respondent of the *prima facie* case made against him and upon whom rested the burden of overcoming not only by clear proof the presumption of unfairness and *mala fides,* but by a clear and distinct response to each averment of the bill.—*Moog v. Barrow,* 101 Ala. 209; *Robinson v. Moseley,* 93 Ala. 70; *Wood v. Pebbles & Co.,* 121 Ala. 100.

But aside from this, under the averments of the bill when the complainants established the existence of their respective debts, it then devolved upon the respondent to prove that the notes evidencing the debt claimed by him against Miller and Palmatier were given for a *bona fide* debt due to him, in the sums recited in them, and that the mortgage was to secure this *bona fide* debt, untainted with any fraud.

The evidence establishes beyond disputation that the complainants were creditors of the Cooperative Furniture Company for material sold to be used in the manufacturing of furniture and that practically all of it was used and constituted a portion of the manufactured articles which went into the possession of Penney under bills of sale made to him by Miller and Palmatier some time prior to the execution of this mortgage. It is also practically undisputable from the evidence, that the debt secured by the mortgage was the same debt, at least the greater portion of it, which was secured by bills of sale to the same property made by Miller and Palmatier to Penney. In fact Penney himself testifies

to having two bills of sale upon this property and shows conclusively that they were intended as mere mortgages. He says the first one was for $292.92; the second for $75 and the invariably speaks of them as having been given these to secure debts due him. According to his testimony the consideration of the mortgage of $525.94 was made up of these two items and an item of $100 which was secured by a bill of sale upon a portion of the property held by Mrs. Miller, wife of respondent Miller, and the item of fifty odd dollars for rent of store and personal services rendered by him in and about the sale of the furniture, which should, under a fair and legal status, have belonged to him. He also shows in his testimony that some of the items included in the $525.94, were individual debts which he claimed Miller and Palmatier owed to him or to other persons which he paid at the request of either Miller or Palmatier. These individual items as found in his account against the Cooperative Furniture Company (Furniture account) attached to his deposition are as follows: Nov. 19, 1895. Cash to W. A. Bibb for the rent of the house occupied by Miller and his family $40. On the same date there appears a charge of $23 amount of rent due him by one Campbell who had long before retired from the firm, also of the same date a charge of $44 for rent due him by Palmatier. Of date Dec. 28 this concern is charged with the amount of a note ($25) given by Palmatier for a cow and transferred to him. There is also an item in Penney's account of $50 for rent of a storehouse for one month, the rental value of which according to all the evidence, was $10 or $15 per month. He explains that the balance of the $50 was charged for services to be rendered by him in looking after the furniture to prevent its being purloined by Miller and Palmatier, notwithstanding the key to this store-room was in his possession. He further explains why the charges for personal liabilities of Miller and Palmatier entered into the consideration of the bill of sales and mortgage by saying that they as partners agreed to assume to pay them. When this agreemnt was made we are not informed, whether when the mort-

gage was made or when the first bill of sale was executed we are not told. The other items included in the $525.94, were $75 which he said was paid to Lovin, $49.02 paid German Looking Glass and P. Co., $10 paid Miller for Hudnall, $75 paid by order on J. L. Brock account labor. These items make a total of $209.02. The $75 which he says he paid to Lovin was not shown to have been a subsisting legal demand, in that the correctness of the account which was composed of items aggregating this sum was not shown. Furthermore it appears that there were items of merchandise charged upon this account for which the partnership as such was not liable. They were purchases made by the individual members of the partnership for their personal use. The $10 paid by him to Miller for Hudnall was not shown to have been received by him or if received that the partnership justly owed it. The order of $75 to Brock was for groceries, but whether he furnished them, Penney did not know.

It is useless to pursue any further the investigation into the facts as disclosed by the evidence relied upon by Penney to establish the *bona fides* of the transaction. Nearly every item composing the account making up the recited consideration in subject to some infirmity going to its integrity as a just demand effecting the validity of the mortgage as against the complainants. Indeed, upon Penney's own testimony the conclusion cannot be escaped that the whole transaction had its inception in fraud of the creditors of Miller and Palmatier. The first act consummated by the parties was to bring into existence a fraudulent conveyance, confessedly fraudulent by the reservation of a benefit to Miller and Palmatier—a bill of sale, absolute upon its face for the security of a debt; and this too to secure in the main their individual indebtedness to him. By the acceptance of it and dealing with the property as was shown by the evidence in this cause, Penney became a trustee for these complainants not only for the proceeds of all property sold by him, but for the value of all property which he suffered Miller or Palmatier to dispose of.—*Dickinson v. National Bank of the Republic*, 98 Ala. 546; *Bir-*

[Penney v. McCulloch *et al.*, and McCulloch *et al.* v. Penney.]

*mingham Shoe Co. v. Torrey, Curtis & Tirrell et al.,* 121 Ala. 89. After their rights attached, which they did while he held the property under the bills of sale, he could not defeat those rights or discharge himself of the liability incurred as trustees by the taking of the mortgage to secure the larger part of this same indebtedness secured to him by the two bills of sale and an additional amount which he claimed they owed him, even if there had been no infirmity as to the items making up the recited consideration of the mortgage. The decree adjudging him liable was correct, but the amount of his liability as there ascertained was too small. The evidence shows that the value of the goods sold by Miller after they went into Penney's possession and the amounts admitted by Penney to have been collected by him from the proceeds of good were more than enough to pay the entire debts of complainants and interest thereon. It follows that the respondent Penney takes nothing by his appeal. And that the complainants by their cross-appeal are entitled to decree for the full amount of their debts and interest.

The decree of the court must be reversed and a decree here rendered in accordance with the views here expressed.

Reversed and rendered.

## ON APPLICATION FOR REHEARING.

On application for rehearing a majority of the court hold, that the decree of this court reversing the decree of the lower court on cross-appeal was error, and that the decree of the chancellor should be affirmed; Justice TYSON not concurring in these views, but holding to the views expressed by him in his opinion.